Andrew H. Griffin, III, (State Bar Number 108378)
Law Offices of **ANDREW H. GRIFFIN, III**
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

Attorney for Debtor in Possession,
Hortensia Carmona

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>Hortensia Carmona,<br><br>               Debtor in Possession. | Case No.: 12-08679-PB11<br><br>Chapter 11<br><br>**THIRD AMENDED DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN DATED JULY 15, 2013, OF HORTENSIA CARMONA**<br><br>Judge: Honorable Peter W. Bowie |

Prepared by:

Andrew H. Griffin, III, (State Bar Number 108378)
Law Offices of Andrew H. Griffin, III
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

On behalf of:
Hortensia Carmona
Debtor and Debtor in Possession

**TABLE OF CONTENTS**

PART I............................................................................................................. 6

INTRODUCTION

A. The Purpose of the Disclosure Statement……………………………………..……… 7

PART II………………………………………………………………………….......8

CONFIRMATION REQUIREMENTS:

VOTE REQUIRED FOR APPROVAL OF THE PLAN………………………………… 8

  A.  Who May Vote or Object……………………………………………………… 9

    1.  Who May Object to Confirmation of the Plan……………………..…………..…… 9

    2.  Who May Vote to Accept/Reject the Plan…………………………………………… 9

      a.   What is an Allowed Claim/Interest…………………………………………… 9

      b.   What is an Impaired Claim/Interest………………………………….…… 10

    3.  Votes Necessary to Confirm the Plan……………………………………………… 10

    4.  Votes Necessary for a Class to Accept the Plan…………………...…………………… 11

    5.  Treatment of Nonaccepting Classes: Absolute Priority…………………………… 11

      a.   Secured Claims………………………………………………………… 12

      b.   Unsecured Claims………………………………………………… 13

    6.  Request for Confirmation Despite Nonacceptance by Impaired Class(es)…………….... 14

PART III…………………………………………………………………………… 14

DESCRIPTION OF THE PLAN………………………………………………… 14

  A. What Creditors and Interest Holders will Receive Under the Proposed Plan……………… 14

  B. Unclassified Claims…………………………………………………………… 14

    1.  Administrative Expenses……………………………………………………… 15

    2.  Court Approval of fees Required…………………………………………………… 15

    3.  Priority Tax Claims…………………………………………………….………… 16

  C. Classified Claims and Interests…………………………………………...…..……… 16

    1.  Classes of Secured Claims……………………………………………………… 16

- 2 -

2.  Classes of General Unsecured Claims……………………………… 30

3.  Class of Interest Holders…………………………………………… 32

D.  Other Provisions of the Plan………………………………………… 32

1.  Effective Date of the Plan………………………………………… 32

2.  Executory Contracts and Unexpired Leases……………………… 32

a.  Assumptions……………………………………………… 32

b.  Rejections………………………………………………… 32

PART IV………………………………………………………………………… 33

MEAN OF EFFECTUATING THE PLAN……………………………………… 33

A.  Funding for the Plan………………………………………………… 33

B.  Disbursing Agent…………………………………………………… 36

PART V…………………………………………………………………..……… 36

CASH REQUIREMENTS……………………………………………..……… 36

PART VI…………………………………………………………………..……… 36

ADMINISTRATIVE EXPENSES…………………………………………..…… 36

PART VII……………………………………………………………..………… 37

LEGAL PROCEEDINGS……………………………………………………… 37

PART VIII……………………………………………………………..……… 37

DESCRIPTION OF THE DEBTOR…………………………………………… 37

A.    Description and History of the Debtor's Business…………………………… 37

B.    Principals/Affiliates of Debtor's Business………………………………… 37

PART IX……………………………………………………………..……… 37

REASONS FOR FINANCIAL DIFFICULTIES AND CORRECTIONS OF THOSE FACTORS.. 37

A.    Reasons for Financial Difficulties………………………………………… 37

B.    Reasons for the Chapter 11 Filing………………………………..……… 38

PART X………………………………………………………………………… 38

ASSETS AND VALUATION……………………………………..…........... 38

PART XI…………………………………………………………………….. 41

LIABILITES……………………………………………………………..…. 41

PART XII…………………………………………………………………..… 42

HISTORICAL AND CURRENT FINANCIAL INFORMATION…………………………..…. 42

PART XIII………………………………………………………………… 43

LIQUIDATION ANALYSIS…………………………………………… 43

PART XIV…………………………………………………………… 46

FEASIBILITY…………………………………………………… 46

PART XV……………………………………………………… 50

FINANCIAL PROJECTIONS…………………………………… 50

PART XVI……………………………………………………… 50

MARKETING EFFORTS………………………………………… 50

PART XVII…………………………………………………..…… 51

POST-PETITION EVENTS…………………………………… 51

PART XVIII………………………………………………………… 52

MANAGEMENT COMPENSATION……………………………........ 52

PART XIX……………………………………………………… 52

INSIDER AND AFFILIATE CLAIMS………………………… 52

PART XX……………………………………………………… 53

UNITED STATES TRUSTEE SYSTEM FUND FEES…………………………………… 53

PART XXI……………………………………………………… 54

TAX ANALYSIS………………………………………………… 54

A.    Tax Impact on the Debtor……………………………… 54

PART XXII……………………………………………………… 55

RISKS TO CREDITORS UNDER THE PLAN…………………………… 55

PART XXIII…………………………………………………… 56

DEFAULT PROVISIONS……………………………………… 56

A.      Post-Confirmation Conversion/Dismissal…………………………………………… 57

B.      Revocation of the Order Confirming the Plan…………………………………… 57

PART XXIV……………………………………………………………………..…..… 57

EFFECT OF CONFIRMATION OF PLAN……………………………………………… 57

A.      Discharge…………………………………………………………………….…... 57

B.      Revesting of Property in the Debtor………………………………………………… 57

C.      Modification of the Plan…………………………………………………………… 58

D.      Post-Confirmation Status Report…………………………………………..…… 58

E.      Final Decree………………………………………………………………………… 58

F.      Retained Bankruptcy Court Jurisdiction…………………………………………… 58

PART XXV……………………………………………………………………………… 59

DISCLAIMER……………………………………………………………………..… 59

# PART I
## INTRODUCTION

On June 20, 2012, Hortensia Carmona, (the "Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The Debtor is an individual, doing business as a sole proprietor. Debtor has been in the business of actively owning and renting real property. In addition to the ownership and management of her investment properties, Kaiser Permanente has employed Ms. Carmona for the past fourteen (14) years as an ultra sound technician. She continues her employment in the health care industry and Debtor owns investment real property in Texas, California, and the Country of Mexico and derives income from the rents received there from. A non-judicial foreclosure was begun against her investment real estate that necessitated Bankruptcy protection. A summary of the real property is listed below:

| Property Address | Classes | Debtor's Intention |
|---|---|---|
| 20535 Kenwood Avenue, Torrance, CA | 1A, 1B | Retain |
| 9853-9855 Arabian Nights Street, El Paso, TX | 1C, 1D | Retain |
| 9857-9859 Arabian Nights Street, El Paso, TX | 1E | Retain |
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | 1F | Retain |
| 881 E. 41st Street, Los Angeles, CA | 1G | Retain |
| 1503 N. Frances Street, Terrell, TX | 1H | Retain |
| Vacant Land #3 – Mexico de Corte | --- | Abandon |
| 30 Manzana Punta Azul, Rosarito, BC | --- | Abandon |
| Vacant Land Lot 13 Duchesne Mini Ranch, UT | --- | Sell |
| Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC | --- | Abandon |
| Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC | --- | Abandon |
| Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico | --- | Abandon |
| Calle Reforma #58, Ciudad Hidalgo House and Lot in Michoacán, Mexico | --- | Abandon |

Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties, to propose a plan of reorganization ("Plan"). Debtor is the proponent of the plan dated July 15, 2013. A true copy of the Plan is attached to this Disclosure Statement as Exhibit A.

The proposed distributions under the plan are discussed at pages <u>13</u> to <u>25</u> of this disclosure statement.    Administrative convenience claims are classified in Class 2A. General unsecured creditors are classified in Class <u>2B</u>, and will receive a distribution of 37% of their allowed claims over time and without interest.

A. The Purpose of the Disclosure Statement. Pursuant to §1125 of the Code, Debtor has prepared and filed this Disclosure Statement along with the Plan, for the Court's conditional approval and submission to the holders of claims and interests. However, before an acceptance or rejection of a plan may be solicited, the Court must find that the Disclosure Statement contains "adequate information."

"Adequate Information" is defined in 11. U. S. C. §1125(a)(1) to mean information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that should enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. In re Metrocraft Publishing Serve, Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984)

**READ THIS DISCLOSURE STATEMENT CAREFULLY TO FIND OUT;**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS, (i.e., if your claim is disputed and what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)     WHETHER THIS PLAN IS FEASIBLE**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and Disclosure Statement, the Plan provisions will govern.

**PART II**
**CONFIRMATION REQUIREMENTS;**
**VOTE REQUIRED FOR APPROVAL OF THE PLAN**

PERSONS OR ENTITIES CONCERNED WITH THE CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

A.    Who May Vote or Object

1.    <u>Who May Object to Confirmation of the Plan</u>

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

2.    <u>Who May Vote to Accept/Reject the Plan</u>

Who may vote: Only impaired creditors are entitled to vote (see section 1124). A creditor is entitled to vote on confirmation of the plan unless (i) the creditor's class is unimpaired (presumed to accept the Plan) or is to receive no distribution (presumed to reject the plan); (ii) an objection has been filed to that creditors claim; (iii) that creditor's claim is scheduled by the debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim; or (iv) that claim is unclassified (and thus required by law to be paid in full). A creditor whose claim has either been objected to or has been scheduled by Debtor as contingent, disputed, unliquidated or unknown or who has not filed a proof of claim, and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard before the hearing on confirmation of the plan. A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a plan in each capacity by delivering one ballot for the secured part of the claim and another ballot for the unsecured portion of the claim.

a.    <u>What is an Allowed Claim/Interest</u>

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the

creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS SEPTEMBER 21, 2012**. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled in the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the Interest.

b.      What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed on the effective date of the Plan.

In this case, the Debtor believes that classes 1A, 1B, 1C, 1D, 1E, 1F, 1G, 1H, 2A, and 2B are impaired and that all holders of claims in each of those three classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

3.      Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, or (2) all

impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in paragraph 6 of this Section.

4.      <u>Votes Necessary for a Class to accept the Plan</u>

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

5.      <u>Treatment of Nonaccepting Classes: Absolute Priority Rule</u>

As noted above, even if all impaired classes do not accept the Proposed Plan, the Court may nevertheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C §1129(b) and applicable case law.

The Debtor is an individual. Other general unsecured creditors will be paid 37 cents on the dollar of their allowed claims without interest, in equal quarterly installments over five years. Under §1129(a)(15), if an unsecured creditor objects to confirmation, an individual debtor must either pay the present value of that unsecured claim in full or make distributions under the plan totaling at least the value of the Debtor's net disposable income over the greater of (a) five years or (b) the period for which the plan provides payments. However, §1129(a)(15) should be read and applied in

conjunction with §1123(a)(4) which provides that Chapter 11 plan must provide the same treatment for each claim in the same particular class.

a.  Secured Claims: There are three ways to satisfy the fair and equitable standard with respect to a dissenting class of secured claims. The first way is to provide the class members retain their security interests (whether the collateral is kept or is transferred by the Debtor) to the extent of their allowed secured claims and to give each secured creditor in the class deferred cash payments that aggregate to at least the amount of the allowed secured claim and which have a present value equal to the value of the collateral. This method of satisfying the fair and equitable standard may be complicated by the application of 11.U.S.C §1111(b)(2). The meaning of "allowed secured claim" as used in this paragraph will depend whether the secured creditor makes a §1111(b)(2) election to be treated as fully secured despite the fact that the collateral may be worth less than the amount of the claim.  Pursuant to §1123(b)(5) a Plan may modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the Debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claim.

(1) Section 1111(b) (2) election; The §1111(b)(2) election converts the unsecured deficiency claim into a claim secured by the collateral of the electing creditor. If a creditor so elects, the Debtor must treat the creditor's entire claim as a secured claim and the Plan must provide for the creditor to receive, on account of its claim, payments, either present or deferred, of a principal face amount equal to the amount of the claim and of a present amount equal to the value of the collateral.

A second alternative for complying with the fair and equitable standard with respect to a class of dissenting secured creditors is for the plan to provide for the realization of the "indubitable equivalent" of their secured claims.

- 12 -

The third alternative for satisfying the fair and equitable standard is to provide in the Plan for the sale of the collateral free and clear of liens, with the liens to attach to the sale proceeds.

b.    Unsecured Claims; There are two ways of satisfying the fair and equitable standard with respect to a dissenting class of unsecured claims. The first way is for the plan to be approved for distributions to the dissenting class worth the full amount of their allowed claims. The allowed claims need not be paid in full on the effective date of the plan. If the plan provides for deferred payments, an appropriate interest rate must be used so that the present value of deferred payments equals the full amount of the allowed unsecured claims of the dissenting class.

The second way to satisfy the fair and equitable test with respect to the dissenting class of unsecured creditors is for the plan to provide that all claims that are junior to the dissenting class do not receive or retain any property on account of their claims or interests. Accordingly, if a dissenting unsecured creditor class is to receive property worth only one-half of its allowed claims, the plan may still be fair and equitable if all junior classes are to receive or retain nothing and if no senior class is to receive more than 100% of its allowed claims.

The Debtor is an individual. Pursuant to Section 1129(a)(15) the Court shall confirm a plan only if the holder of an allowed unsecured claim objects to the confirmation of the plan the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the plan is not less than the projected disposable income of the debtors to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In, In re Karlovich, this court held that the absolute priority rule applies to individual debtors. The Debtor contends that it is not a violation of the Absolute Priority Rule since distribution under

the plan is not less than the projected disposable income of the debtor to be received during the 5-year period beginning on the date that the first payment is due under the plan. (The unsecured Creditors will receive 37 cents on the dollar on their claims. Since this is a consensual plan, Debtor asserts that the Absolute Priority Rule will not be at issue in this Plan.)

In the event an unsecured creditor objects to Plan confirmation based upon 11 U.S.C. §1129(b)(2)(B) [the "Absolute Priority Rule"], the Debtor retains the right to make a new value contribution, subject to allowing exclusivity to expire or allowing an auction for the right to control the objecting secured creditor's collateral.

6.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor's Plan, pursuant to Section 1123(b) of the Bankruptcy Code, provides for the revaluation of the Debtor's real properties (with the exception of the primary residence) in accordance with each property's current market value immediately prior to final confirmation of the Plan. If you are a secured creditor, your secured claim may be reduced in accordance with Section 506(a) of the Bankruptcy Code, as of the effective date of the Plan. If you disagree with the revaluation or the appraised amounts, you should object to the Plan.

## PART III
## DESCRIPTION OF THE PLAN

**A.    What Creditors and Interest Holders will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, The Plan classifies claims and interests in various classes according to their right to priority. The plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes, instead they are unclassified. They are not considered impaired and can't vote on the Plan because they are automatically entitled to

specific treatment provided for them in the Bankruptcy Code. As such, the proponent has not placed the following claims in a class:

## 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case, which are allowed under Code §507(a)(1). The Code requires that all administrative claims be paid on the Effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of Debtor's §507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Law Office of Andrew H. Griffin, III | $15,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0 | Paid in full on effective date. |
| Office of the U. S. Trustee | $650.00 | Paid in full on effective date. |
| **TOTAL** | $15,650.00 | |

## 2.    Court Approval of Fees Required:

With the exception of the Clerk and the Office of the U.S. Trustee, the Court must rule on all fees listed in this chart before the fees will be owed. The professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $15,650.00 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtor will have

- 15 -

$35,369.00 on hand on the Effective Date of the Plan. The source of this cash will be from rents collected from Debtor's real property.

**3.      Priority Tax Claims**

Priority tax claims include certain unsecured income, employment and other taxes described by code § 507(a)(8). Debtor believes there are no Unsecured Priority Tax Claims, Classified Claims and Interests. Debtor is current on Post-Petition Taxes.

**C.      Classified Claims and Interests**

**1.      Classes of Secured Claims**

Secured Claims are claims secured by liens on property of the estate. The following charts list all classes containing Debtor's secured pre-petition claims and their treatment under the Plan.

| CLASS #1A | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Bank of America, N.A.** | | N | Y | To be treated as partially secured in the amount of $275,000.00 The unsecured amount shall be treated in Class 2B. |
| Collateral Description | **20535 Kenwood Avenue, Torrance, CA** | | | $1,353.00 Monthly (Secured claim) Unsecured portion treated in Class 2B. |
| Collateral Value | $275,000.00 | | | Begin Date: Fifth day the month starting the first month after the effective date. |
| Priority of Security | First Deed of Trust | | | End Date: 30 years from effective date |
| Principal | $365,261.70 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage | $0 | | | Interest Rate 4.25% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $275,00.00 plus 4.25% per annum. |
| Total Claim Amount | $275,000.00 Secured | | | Retain and reaffirm pursuant to |

| | $90,261.70 Unsecured treated in Class 2B. | | | Modification agreement. |
|---|---|---|---|---|

Debtor contends that the value of the collateral is less than the amount of the claim. On December 13, 2012, the Court entered an Order on Motion to Value the real property. (Docket No. 155) valuing the property in the amount of $275,000.00. Debtor will pay as a secured claim the amount equal to the value of the collateral that is $275,000.00.  Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments. Payments will be due on the Fifth day of the month, starting the first month after the effective date. The remaining amount due of $90,261.70 is a general unsecured claim treated in Class 2B.  The Creditor in this class shall retain its interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS  #1B | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **The Bank of America** | | N | Y | To be treated as partially secured in the amount of $75,000.00. The unsecured amount shall be treated in Class 2B. |
| Collateral Description | **9853-9855 Arabian Nights Street, El Paso, TX** | | | $369.00 Monthly (Secured claim) Unsecured portion treated in Class 2B. |
| Collateral Value | $75,000.00 | | | Begin Date: On Effective Date |
| Priority of Security | First Deed of Trust | | | End Date 30 years from effective date |
| Principal Owed | $102,411.67 | | | Balloon (Y/N) N |

- 17 -

| Pre-Petition Arrearage Amount | $7,148.22 | | | Interest Rate: 4.25% |
|---|---|---|---|---|
| Post-Petition Arrearage Amount | $0 | | | Total Payout: $75,000.00 plus interest at 4.25% per annum |
| Total Claim Amount (Claim #10) | $102,411.67 $75,000.00 Secured amount $27,411.61 Unsecured amount treated in Class 2B. | | | |

Debtor contends that the value of the collateral is less than the amount of the claim. On March 13, 2013, the Court entered an Order to Value the real property in the amount of $75,000.00 (Docket No. 189). Debtor will pay as a secured claim the amount equal to the value of the collateral that is $75,000.00. Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments. Payments will be due on the Fifth day of the month, starting the first month after the effective date. The remaining amount due of $27,411.61 is a general unsecured claim treated in Class 2B. The Creditor in this classes shall retain its interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS  #1C | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Bank of New York Mellon** | | N | Y | Debtor intends to have this class treated as wholly unsecured. |
| Collateral Description | **9853-9855 Arabian Nights Street, El Paso, TX** | | | The unsecured amount shall be treated in Class 2B. |
| Collateral Value | $75,000.00 | | | |

- 18 -

| Priority of Security | Second Deed of Trust | | | |
|---|---|---|---|---|
| Principal Owed | $11,208.59 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage Amount | $1,325.61 | | | |
| Post-Petition Arrearage Amount | $0 | | | |
| Total Claim Amount (Claim #8) | $11,208.59 | | | Treated as unsecured in Class 2B. |

The claims will be treated as wholly unsecured in the amount of $11,208.59 and treated in Class 2B. On March 13, 2013, the Court entered an Order to Value the real property in the amount of $75,000.00 (Docket No. 189). The secured amount of the above creditor's claims is set at zero. Debtor will pay nothing to this creditor as a secured claim. The claim of a creditor whose lien is stripped is a general unsecured claim treated in Class 2B.

The Creditor in this class may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS #1D | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Bank of America, N.A.** | | N | Y | To be treated as partially secured in the amount of $101,500.00. The unsecured amount shall be treated in Class 2B. |
| Collateral Description | **9857-9859 Arabian Nights Street, El Paso, TX** | | | $502.00 Monthly |
| Collateral Value | $101,500.00 (by stipulation) | | | Begin Date: On Effective Date. |
| Priority of Security | Home Equity Line of Credit | | | End Date: 30 years from effective date |

| Principal Owed | $104,507.56 | | | Balloon (Y/N) N |
|---|---|---|---|---|
| Pre-Petition Arrearage Amt | $9,957.53 | | | Interest Rate 4.3% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $101,500.00 plus interest at 4.3% per annum. |
| Total Claim Amount (Claim #6) | $104,507.56 $101,500.00 Secured amount $3,007.56 Unsecured amount treated in Class 2B. | | | Partially secured and partially unsecured. |

The Bank of America, N.A., and the Debtor have entered into an agreement which terms are fully incorporated into the plan and confirmed by Court Order. (Docket No. 160) The significant terms are that the Lender shall have a secured claim in the amount of $101,500.00 (the "Secured Claim") and an unsecured claim in the amount of $3,007.56 (the "Unsecured Claim") in the Debtor's Chapter 11 Plan of Reorganization (the "Plan"). The Secured Claim shall be amortized at 4.3% per annum for 30 years at a monthly principal and interest payment of $502.00. The Lender will also impound the account for property taxes and insurance. The debtor seeks to fully incorporate the entire agreement into the plan. Debtor will seek the Court's ratification of the agreement as part of the confirmation of the plan.

Debtor seeks to value the real property in the amount of $101,500.00. Debtor seeks to have claim treated as partially secured in the amount of $101,500.00 and the unsecured amount of $3,007.56 treated in Class 2B as an unsecured claim.

| CLASS #1E | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **The Bank of New York Mellon fka The Bank of New York** | | N | Y | Debtor intends to have this class treated as wholly unsecured. |
| Collateral | **9857-9859 Arabian** | | | To be treated as |

- 20 -

| Description | **Nights Street, El Paso, TX** | | | wholly unsecured and treated in Class 2B. |
|---|---|---|---|---|
| Collateral Value | $101,500.00 | | | Balloon (Y/N) N |
| Priority of Security | Second Deed of Trust | | | |
| Principal Owed | $6,940.83 | | | |
| Pre-Petition Arrearage Amt | $1,525.81 | | | |
| Post-Petition Arrearage Amt | $0 | | | |
| Total Claim Amount (Claim #9) | $8,466.64 | | | Wholly unsecured. |

**The claim will be treated as wholly unsecured and paid in Class 2B.**

On December 17, 2012, the Court entered an Order on Motion to Value the real property. (Docket No. 160) valuing the property in the amount of $101,500.00. Prior to confirmation, Debtor will obtain an order or stipulation fixing the secured amount of the above creditor's claims at zero. Debtor will pay nothing to this creditor as a secured claim.  The claim of a creditor whose lien is stripped is a general unsecured claim treated in Class 2B.

The Creditor in this class may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS   #1F | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Wells Fargo Bank, N.A.** | | N | Y | Partially secured in the amount of $34,500.00. Unsecured to be treated in Class 2. |
| Collateral Description | **1503 N. Frances St, Terrell, TX** | | | $195.19 Monthly |
| Collateral Value | $34,500.00 | | | Begin Date: On the fifth day of the month starting the first month after Effective Date. |

- 21 -

| Priority of Security | First Deed of Trust | | | End Date: Thirty (30) years |
|---|---|---|---|---|
| Principal Owed | $47,932.74 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage Amt | | | | Interest Rate 4.75% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout: $34,500.00 plus interest at 4.25% per annum |
| Total Claim Amount (Claim #7) | $47,932.74 | | | Debtor shall pay to creditor an impound to include taxes and insurance. |

**THE PARTIES STIPULATE AS FOLLOWS**:

1.      Creditor shall have a secured claim in the amount of $37,418.44 to be amortized over 30 years at a fixed interest rate of 4.75% per annum (the "**Secured Claim**").

2.      Creditor shall have an unsecured claim in the amount of $12,023.30 (the "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtor's Chapter 11 Plan, as amended.

3.      Debtor shall tender regular monthly payments of principal and interest to Creditor (and/or its servicer) in the amount of $195.19 on the first day of each month for the Secured Claim commencing on October 1, 2013 and continuing on the first day of each month thereafter until September 1, 2043 when all outstanding amounts due under the Secured Claim are to be paid in full.

4.      In addition to the principal and interest payment described in paragraph 3 of this Stipulation, Debtor shall tender to Creditor (and/or its servicer) all necessary escrow payments for any and all real property taxes and/or real property insurance advances as required by Creditor (and/or its servicer) and in accordance with any requirements under the Deed of Trust. Debtor shall tender the necessary escrow payments together with the regular monthly mortgage payments

described in paragraph 3 above, commencing on October 1, 2013 and continuing on the first day of each month thereafter until September 1, 2043 at which time the Secured Claim and any related escrow charges must be paid in full. The current amount of the escrow payment is $284.87; however, Debtor understands the amount of this payment is subject to change.

5.      In the event of any default on any of the provisions of this Stipulation, Creditor shall provide written notice, via certified mail, to Debtor at the Subject Property and to Debtor's attorneys of record, provided the Debtor's bankruptcy remains active, indicating the nature of default. If Debtor fails to cure the default or payment default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property, including unlawful detainer, without further notice, order, or proceeding of this Court.

6.      The acceptance by Creditor (and/or its servicer) of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

7.      Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of Creditor's Secured Claim.

8.      In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

9.      In the event the Debtor defaults under this Stipulation and Creditor (and/or its servicer) forwards a 30-day default letter to Debtor, Debtor shall be required to tender Creditor's

reasonable attorneys' fees and costs for each default letter submitted, in addition to the default stated therein, in order to cure the default. Any notice of default that Creditor (and/or its servicer) provides Debtor and/or Debtor's attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

10.    At the request of the Creditor (and/or its servicer), Debtor shall execute such documents and instruments as required by Creditor (and/or its servicer) to reflect the Debtor as the borrower of the Secured Claim, and to modify the terms of the Loan obligation to conform to the provisions of this Stipulation, as Creditor (and/or its servicer) deems necessary.

11.    In the event the Debtor seeks to sell the Subject Property at anytime prior to confirming her Chapter 11 Plan, as amended, or if she seeks to sell the Subject Property through her Chapter 11 Plan, Creditor shall be entitled to credit bid at any such sale in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust at the time of said sale, with Creditor's lien attaching to said proceeds in the same priority as its Deed of Trust.

12.    In the event the Debtor seeks to sell the Subject Property at anytime after her Plan is confirmed, but prior to the substantial consummation of the Debtor's Chapter 11 Plan and receipt of a Chapter 11 discharge, Creditor (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust. If the proposed sale of the Subject Property is for less than the unmodified,

outstanding balance owing under the Note and Deed of Trust, then Creditor's consent must be obtained in writing prior to any such sale. In the event the Debtor seeks to sell the Subject Property after substantial consummation of Debtor's Chapter 11 Plan and receipt of a Chapter 11 discharge, the foregoing requirements of this paragraph 12 shall no longer apply; however, in no event shall the sale of the Subject Property be for less than Creditor's Secured Claim.

13.    The terms of this Stipulation may not be modified, altered, or changed by the Debtor's Chapter 11 Plan; any subsequently filed amended or modified Chapter 11 Plan of Reorganization or any order on the foregoing without the express written consent of the Creditor. The above terms of this Stipulation shall be incorporated into the Debtor's Chapter 11 Plan and/or any subsequently filed amended or modified Chapter 11 Plan and confirmation order thereon. In the event of a conflict between the terms or provisions of this Stipulation and Debtor's Chapter 11 Plan or any amendments or modifications thereto, the terms of this Stipulation shall control.

14.    The terms of this Stipulation are contingent upon the substantial consummation of the Debtor's confirmed Plan and receipt of a Chapter 11 discharge. In the event the Debtor defaults under the terms of this Stipulation or fails to complete Plan payments prior to receipt of a discharge, the provisions of this Stipulation shall be void.

15.    In the event Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Note and Deed of Trust, and the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

16.    In exchange for the forgoing, Creditor shall provide a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization, as amended, for the Secured Claim and the Unsecured Claim.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS #1G | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **OneWest Bank, FSB** | | N | Y | To be treated partially secured in the amount of $275,000.00. The unsecured amount shall treated in Class 2B. |
| Collateral Description | **881 E. 41st Street, Los Angeles, CA** | | | $1,237.00 Monthly |
| Collateral Value | $275,000.00 | | | Begin Date: On the fifth day of the month starting the first month after Effective Date. |
| Priority of Security | First Deed of Trust | | | End Date: Thirty (30) years from effective date. |
| Principal Owed | $484,590.49 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage Amount | $-0- | | | Interest Rate 4.3% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $275,00.00 plus interest at 4.3% per annum. |
| Total Claim Amount | $484,590.49 Secured amount $275,000.00 Unsecured amount $209,590.49 | | | |

Debtor contends that the value of the collateral is less than the amount of the claim. On December 13, 2012, the Court entered an Order on Motion to Value the real property. (Docket No. 155) valuing the property in the amount of $275,000.00. Debtor will pay as a secured claim the

- 26 -

amount equal to the value of the collateral that is $275,000.00. Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments. Payments will be due on the Fifth day of the month, starting the first month after the effective date. The remaining amount due of $209,590.49 is a general unsecured claim treated in Class 2B. The Creditor in this class shall retain its interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

| CLASS   #1H | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Bayview Loan Servicing, LLC** | | N | Y | Retain and Affirm Loan Adjustment agreement dated 12/20/12. |
| Collateral Description | **10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA** | | | Total Monthly Payment $1,307.64 ($895.73 Principal and interest Escrow $411.91) |
| Collateral Value | $220,000.00 | | | Begin Date: 11/1/12 |
| Priority of Security | First Deed of Trust | | | End Date: March 1, 2038 |
| Principal Owed | $215,218.97 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage Amount | $-0- | | | Interest Rate 2.00% to 6.00% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $215,218.97 plus Interest in accordance with note. |
| Total Claim Amount (Claim #12) | $215,218.97 | | | Retain and reaffirm |

Debtor seeks to have the loan Modification to become fully incorporated into the plan. An

application to approve the loan modification was filed with the Court (See Docket No. 167).

The significant terms are noted below. Debtor will seek the Court's ratification of the entire loan modification and fully incorporate the terms of the loan modification as part of the confirmation of the plan.

| Years | Interest Rate | Total P&I Payment |
|---|---|---|
| **11-1-12 – 11-1-14** | 2.000% | $895.73 |
| **11/1/14 to Maturity** | Per Note | Not to exceed 6% and 1% increase each year |

**Property to be Abandoned.**

| Class | Name of Creditor | Description of Property |
|---|---|---|
| --- | No Secured Creditor Exists | Vacant Land #3 – Mexico de Corte |
| --- | No Secured Creditor Exists | 30 Manzana Punta Azul, Rosarito, BC |
| --- | No Secured Creditor Exists | Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC |
| --- | No Secured Creditor Exists | Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC |
| --- | No Secured Creditor Exists | Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico |

Debtor will abandon the above Mexican Properties by means of a Quitclaim Deed (Escritura de Renuncia de derechos) to the taxing authorities on the Effective Date of the Plan. The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan. Although Debtor asserts that there are no secured creditors, any secured claim is satisfied in full through the surrender of the collateral. Any deficiency claim is a general unsecured claim treated in Class 2B. Creditors in these classes shall retain their interest in the collateral.

**Property to be Sold.**

| Class | Name of Creditor | Property | Value of Collateral |
|---|---|---|---|
| ---- | No Secured Creditor Exists | Vacant Land Lot 13 Duchesne Mini Ranch, UT | $13,500.00 |

- 28 -

Debtor will sell the above Real Property by October 1, 2013, paying unsecured creditors from the proceeds of the sale. An Order employing Freedom Realty Corp., a real estate broker, was on June 27, 2012. Although Debtor asserts that there are no liens against the Real Property, Debtor will file a motion for approval of any such sale on 28 days notice to any lien holders. No commissions will be paid to the real estate broker without Court approval. Unless the Court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Section 2B.

**Class 2A. Administrative Convenience Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid | (%) to be Paid |
|---|---|---|---|
| Capital One, N.A. c/o Creditors Bankruptcy | $663.00 | $245.31 | 37% |
| Kohl's | $691.00 | $255.67 | 37% |
| Target National Bank | $93.00 | $34.41 | 37% |
| Asset Acceptance LLC | $117.00 | $43.29 | 37% |
| Discover Bank DB Servicing Corporation (Claim 2) | $450.00 | $166.50 | 37% |
| FIA Card Services, N.A. (Claim 3) | $525.78 | $194.54 | 37% |
| Total | $2,539.78 | $939.72 | 37% |

This class includes any creditor whose allowed claim is One Thousand dollars [$1,000.00] or less, and any creditor in Class 2B whose allowed claim is larger than One Thousand dollars [$1,000.00] but agrees to reduce its claim to One Thousand dollars [$1,000.00]. Each creditor will receive on the Effective Date of the Plan a single payment equal to 37% of its allowed claim.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan. **Claimants in this class are impaired and are entitled to**

**vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

**2. Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). The following chart identifies the Plan's treatment of the class containing all of Debtor's general unsecured claims.

| CLASS #2B<br>General Unsecured Claim<br><br>DESCRIPTION | Claim Amount | IMPAIRED<br>(Y/N) | TREATMENT<br>Payment Interval<br>**Quarterly** |
|---|---|---|---|
| Macy's | $2,817.00 | Y | $52.11 Quarterly<br>Total Payout $1,042.29 |
| Chase Bank | $4,300.00 | Y | $79.55 Quarterly<br>Total Payout $1,591.00 |
| Wells Fargo Card Services<br>(Claim 1) | $6,825.82 | Y | $126.28 Quarterly<br>Total Payout $2,525.55 |
| American Express Bank,<br>FSB<br>(Claim 4) | $1,002.92 | Y | $18.55 Quarterly<br>Total Payout $371.08 |
| OneWest Bank, FSB<br>(Unsecured Claim of Class<br>1G) | $209,590.49 | Y | $3,877.42 Quarterly<br>Total Payout $77,548.48 |
| Wells Fargo Bank<br>(Unsecured Claim of Class<br>1F - Claim 7) | $13,432.74 | Y | $248.51 Quarterly<br>Total Payout $4,970.11 |
| Bank of New York Mellon<br>(Unsecured Claim of Class<br>1E - Claim 9) | $8,466.64 | Y | $156.63 Quarterly<br>Total Payout $3,132.66 |
| Bank of America<br>(Unsecured Claim of Class<br>1D - Claim 6) | $3,007.56 | Y | $55.64 Quarterly<br>Total Payout $1,112.80 |
| Bank of America<br>(Unsecured Claim of Class<br>1C - Claim 8) | $11,208.59 | Y | $207.36 Quarterly<br>Total Payout $4,147.18 |
| The Bank of America<br>(Unsecured Claim of Class<br>1B - Claim 10) | $27,411.67 | Y | $507.12 Quarterly<br>Total Payout $10,142.32 |
| Bank of America<br>(Unsecured Claim of Class<br>1A) | $90,269.70 | Y | $1,669.99 Quarterly<br>Total Payout $33,399.79 |

| | |
|---|---|
| Amount Class 2A Small Claims | $2,539.78 |
| Amount Class 2B General Unsecured | $378,333.13 |
| Total Unsecured | $380,872.91 |

Estimated Payment
$7,046.15
Amount/Quarterly

Balloon (Y/N) N

Begin Date: On the fifth day of the month starting the first month after Effective Date
End Date: December 1, 2018

Total payout $140,922.98

Total Payout 37%

Creditors will receive quarterly payments described above. The estate Real Properties have deferred maintenance, but after loan modifications and creditor negotiations they generate sufficient cash flow to pay the debt service and property improvement. Debtor has budgeted $4,458.52 for unexpected emergencies, capital improvements, repairs and/or vacancies each month which will be used towards the payment of Class 2B claims once a reserve of $30,000.00 is attained. In addition to the payments as set forth above, unsecured creditors in Class 2B will receive a pro-rata share of such excess of the excess over thirty thousand ($30,000.00) dollars. Debtor shall segregate funds that exceed the $30,000.00 reserve in a separate account and shall distribute funds (when $15,000.00 has been accumulated) to the unsecured creditors in Class 2B. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class.

In addition, the unsecured creditors in Class 2B shall receive a pro-rata share of the net sales proceeds from the sale of the real property Vacant Land Lot 13 in Duchesne Mini Ranch, UT. Pro-rata means the entire amount of the net sales proceeds divided by the entire amount owed to

creditors with allowed claims in this class. The estimated net sales proceeds are $10,000.00.

**3.  Classes of Interest Holders**

The Debtor is an individual. The Debtor is the interest holder.  Debtor's interest will not be impaired.  The Debtor will retain ownership interest subject to the terms of the plan.

**D.      Other Provisions of the Plan**

1.      Effective Date of the Plan

The Effective Date of the Plan is 14 days following the date of entry of the order confirming the Plan unless a stay of the confirmation order is in effect, in which case the Effective Date will be the first business day after the date on which the stay of the confirmation order has been lifted, provided that the confirmation order has not been vacated. Debtor expects the Effective Date of the Plan to be in January 2014.

2.      Executory Contracts and Unexpired Leases

a.      Assupmtions

The Debtor's income is derived from rental of real property owned by the Debtor. On the Effective Date, the Debtor assumes the executory contracts and unexpired leases of the Bankruptcy Estate and shall perform all obligations there under, both pre-confirmation and post-confirmation.

On the Effective Date Debtor shall pay any post petition pre-confirmation arrearages, unless the parties agree otherwise or the court finds that a proposed payment schedule provides timely cure and adequate assurance of future performance. Post-confirmation obligations will be paid as they come due. The Debtor estimates that if any post-confirmation obligations exist they will not exceed $1,500.00.

b.      Rejections

There is no Executory Contract with the Debtor that is rejected. If any exists, a proof of claim

for any damages resulting from such rejection shall be filed within thirty (30) days after the Effective Date of the Plan. Such claim shall be deemed allowed unless, within thirty (30) days of service of a copy of the proof of claim upon the Reorganized Debtor and its counsel, an objection is filed. The objection shall be determined by the Court as a contested matter under Federal Rule of Bankruptcy Procedure 9014. Any such Claim, if allowed, shall be added to Class 2B and treated as provided in Section 5.04 of the Plan.

Debtor is not aware of any other unexpired leases or executory contracts. If any should be found to exist, the Reorganized Debtor reserves the right to assume or reject it. Any such assumption or rejection shall be in accordance with the provisions of Section 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006. A proof of claim for damages resulting from a rejection shall be filed within thirty (30) days after entry of an order of the Court approving the rejection. Such claim shall be allowed unless, within thirty days of service of a copy of the proof of claim upon the Reorganized Debtor and its counsel, an objection is filed. Each objection shall be determined by the Court as a contested matter under Federal Rule of Bankruptcy Procedure 9014. Any such claim, if allowed, shall be added to Class 2B and treated as provided in Section 5.04 of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE OF THE PLAN**. Any claim based on the rejection of contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**PART IV**
**MEANS OF EFFECTUATING THE PLAN**

A.      Funding for the Plan.

Debtor will continue to be employed by Kaiser Permanente as an ultra sound technician. The Chart

below depicts the income that she received during the full months of the pendency of the Bankruptcy

petition.

| DATE | NET MONTHLY INCOME FROM EMPLOYMENT |
|---|---|
| July 2012 | $8,506.10 |
| August 2012 | $5,775.98 |
| September 2012 | $5,829.36 |
| October 2012 | $6,064.52 |
| November 2012 | $9,070.88 |
| December 2012 | $6,373.03 |
| January 2013 | $5,166.54 |
| February 2013 | $5,128.35 |
| March 2013 | $5,785.70 |
| April 2013 | $5,226.68 |
| May 2013 | $7,739.22 |
| June 2013 | $5,137.63 |
| July 2013 | $5,180.47 |
| August 2013 | $5,222.31 |
| September 2013 | $5,069.06 |
| October 2013 | $5,479.62 |
| **TOTAL** | **$96,755.45** |
| **AVERAGE MONTHLY NET EMPLOYMENT INCOME** | **$6,047.21** |

Debtor will continue to receive an average net income from Kaiser Permanente in the amount

of $6,047.21 each month during the life of the plan.  Debtor will continue to manage her rental

operations. Debtor expects the net income to grow significantly, because after Plan confirmation, the

loan modifications and cramdowns will increase net income. As the Historical and Current Financial

Information shows (Part XII) the Post confirmation net income will grow to $3,813.94 per month

from the Pre-Petition net loss of ($1,631.65) per month. By the time of Plan confirmation, or on the

effective date, Debtor expects to have sufficient funds on hand to pay all Administrative

convenience claims.

Real property will be sold to fund the Plan. Debtor will sell the Vacant Land Lot 13 Duchesne Mini Ranch, UT.  The unsecured creditors in Class 2B shall also receive a pro-rata share of the net sales proceeds from the sale of the real property Vacant Land Lot 13 in Duchesne Mini Ranch, UT. Pro-rata means the entire amount of the net sales proceeds divided by the entire amount owed to creditors with allowed claims in this class. The estimated net sales proceeds are $10,000.00.

The Plan will be funded from operations from cash flow and future rental income.  The Plan proposes to pay to the unsecured creditors in Class 2B $7,046.17 each quarter (i.e. $2,348.72 each month).  As Debtor's financial projections demonstrate, Debtor will have an average gross monthly income of $20,386.64. After paying operating expenses, plan payments and post-confirmation taxes, of $13,362.73 each month for the life of the Plan, the net monthly sum of $7,023.91 will be used for contingencies for vacancies and Debtor's living expenses. Current/Post petition Income and Expenses, which have been prepared as of October 31, 2013, and are attached hereto as Exhibit B.

The financial projections were made utilizing the historical information and post confirmation stipulations and loan modifications the secured lenders in the rental properties. The projections do not account for unexpected emergencies, capital improvements, repairs and/or vacancies. In addition to the payment as set forth in the plan, whenever the reorganized Debtor's account exceeds thirty thousand ($30,000.00) dollars. Debtor shall segregate funds that exceed the $30,000.00 reserve in a separate account and shall distribute funds (not less than $5,000.00) to the unsecured creditors in Class 2B. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class. Creditors will receive a pro-rata share of such excess. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class.

B.      Disbursing Agent.

The Debtor shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan.

## PART V
## CASH REQUIREMENTS

On the Effective Date of the Plan, Debtor will need approximately $15,650.00 to pay administrative expenses.

## PART VI
## ADMINISTRATIVE EXPENSES

Administrative expenses are defined in §507(a)(1) of the Code. They include the Debtor's post-petition operating expenses, which are unpaid on the Effective Date of the Plan. These post-petition expenses will be assumed and paid by the reorganized Debtor. Administrative expenses also include the Court approved fees and costs of professional persons. In this case, the Court has approved the employment of Attorney, Andrew H. Griffin, III. The Court must approve this payment. A retainer was collected from Debtor in the amount of $10,000.00 that will be applied toward payment.  The Court has also approved the employment of an appraiser that has been paid pursuant to Court Order.

Other than ordinary course of business expenses, Debtor believes that Administrative Claims consist of the professional fees of Debtor's Professionals. Under the plan, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Administrative Claim; provided, however, that Administrative Claims that represent liabilities incurred by Debtor in the ordinary course of its business during the Bankruptcy Case will be paid in the ordinary course of its business and in

accordance with any terms and conditions of any agreements relating thereto.

## PART VII
## LEGAL PROCEEDINGS

No proceedings to avoid liens are pending or anticipated, except the Parties in interest may file objections to disputed claims after Plan Confirmation thirty (30) days after confirmation. Nevertheless, Debtor does not anticipate becoming involved in any litigation after Plan confirmation that would materially affect Debtor's reorganization.

## PART VIII
## DESCRIPTION OF THE DEBTOR

A.  Description and History of the Debtor's Business.

The Debtor is an individual employed in the Health Care industry and in the business of actively owning and renting real property.  The Debtor is receiving income from her usual occupation as an ultrasound Technician with Kaiser that she has done for the last fourteen (14) years.

B.  Principals/Affiliates of Debtor's Business.

During the two years prior to the date on which the bankruptcy petition was filed, there have been no officers, directors, managers or other persons in control of the Debtor except Hortensia Carmona, the Debtor.

## PART IX
## REASONS FOR FINANCIAL DIFFICULTIES AND CORRECTIONS OF THOSE FACTORS

A.  Reasons for Financial Difficulties

The Debtor is a native of the Country of Mexico. On two separate occasions, her brothers who resided in Mexico were kidnapped and held for ransom. The Debtor paid the ransom on each occasion and ultimately relocated her family to safe locations. The payment of the ransoms and costs of relocation of her family exacted a financial toll on the Debtor, resulting in defaults on the Secured

Notes and threatened foreclosures.

Debtor also fell prey to an attorney by paying him the amount of $28,998.00 for a Chapter 13 Bankruptcy petition that was dismissed. The attorney was ultimately suspended from the practice of law. No return of the funds has been made despite the fact that the Court ordered the fees to be disgorged.

**Corrections of the Factors.**

Debtor relocated her family and they are no longer susceptible to kidnapping since they have relocated to safe areas to reside. Debtor has obtained competent insolvency counsel to assist in the resolution of her economic problems.

B.  Reason for the Chapter 11 Filing

The Bankruptcy Petition was filed to stop the Trustee sale of several of the properties and to modify the loans.

**PART X**
**ASSETS AND VALUATION**

Debtor's assets are listed below.  A certified appraiser supports the values of the real property shown.  Each appraisal has been filed with the Court as part of Debtor's motions to value.

**Real Property**

**A. 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA**

Description of Property:   The property is a commercial property, which consists of 2,654 square foot.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $2,360.00 | $895.73<br>1st - Bayview Loan Servicing | $200.00 | $211.91 | $208.33 | $844.03 |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| | | | | | |

| $220,000.00 | $215,218.97 | No | Yes | Yes | No |

### B. 20535 Kenwood Avenue, Torrance, CA

Description of Property: The property is a single-family residence that consists of 1,544 square foot, 3 bedrooms, 2 bathrooms home, and 2-vehicle garage.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $1,800.00 | $1,353.00 1st - Bank of America | $0 | $0 | $110.00 | $337.00 |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $275,000.00 | $365,267.70 | No | Yes | Yes | No |

### C. 881 E. 41st Street, Los Angeles, CA

Description of Property: The property is a multiplex which consists of Unit 1, 993 square foot, 2 bedrooms, 1 bath; Unit 2, 993 square foot, 2 bedrooms, 1 bath; Unit 3, 993 square foot, 2 bedrooms, 1 bath; Unit 4, 550 square foot, 1 bedroom, 1 bath.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $3,800.85 | $1,237.00 1st - OneWest Bank, FSB | $31.91 | $322.36 | $730.00 | $1,479.58 |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $275,000.00 | $484,590.49 | No | Yes | Yes | No |

### D. 1503 N. Frances Street, Terrell, TX

Description of Property: The property is a single-family residence that consists of 1,084 square foot, 3 bedrooms, 3 bathrooms and garage for 2 vehicles.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $695.00 | $170.00 1st - Wells Fargo Bank | $10.00 | $127.27 | $169.50 | $218.23 |

| Appraised Value | Liens | Balloon | Occupied | Rents | Taxes Delinquent |
|---|---|---|---|---|---|

| | | Payment | | Current | |
|---|---|---|---|---|---|
| $34,500.00 | $47,932.74 | No | Yes | Yes | No |

The Property taxes are current.

The Mortgage payments of $590.00 per month (Payments of taxes and insurance are included).

### E. 9853-9855 Arabian Nights Street, El Paso, TX

Description of Property: The property is a single-family residence that consists of 1,776 square feet, 3 bedrooms, 3 bathrooms and a garage for 2 vehicles.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $1,310.00 | $895.73<br>1st - Bank of America | $75.00 | Impound | $231.00 | $108.27 |
| | 2nd - Bank of America | | | | |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $75,000.00 | $102,411.67 | No | Yes | Yes | No |
| | $11,208.59 | | | | |

### G. 9857-9859 Arabian Nights Street, El Paso, TX

Description of Property: The property is a single-family residence that consists of 950 square feet, 3 bedrooms, 3 bathrooms and a garage for 2 vehicles.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $1,275.00 | $502.00<br>1st - Bank of America | $75.00 | $80.00 | $227.50 | $390.50 |
| | 2nd - Bank of New York Mellon (Bank of America) | | | | |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $101,500.00 | $104,507.56 | No | Yes | Yes | No |
| | $8,466.64 | | | | |

### Total Pre-Petition Net Monthly Income of All Real Property is: (-$1,631.65)

| Property Address | Value |
|---|---|
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | $220,000.00 |
| 20535 Kenwood Avenue, Torrance, CA | $275,000.00 |
| 881 E. 41st Street, Los Angeles, CA | $275,000.00 |
| 1503 N. Frances Street, Terrell, TX | $34,500.00 |
| 9853-9855 Arabian Nights Street, El Paso, TX | $75,000.00 |
| 9857-9859 Arabian Nights Street, El Paso, TX | $101,500.00 |
| Vacant Land #3 – Mexico de Corte | $1,200.00 |
| 30 Manzana Punta Azul, Rosarito, BC | $24,000.00 |
| Vacant Land Lot 13 Duchesne Mini Ranch, UT | $13,500.00 |
| Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC | $14,000.00 |
| Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC | $14,000.00 |
| Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $14,500.00 |
| Calle Reforma #58, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $30,923.00 |

Total Value of Real Property: $1,093,123.00

The values shown on the real property (except those situated in Mexico and Utah) are based upon

the appraisals by a certified appraiser who has been employed by Debtor.

## PART XI
## LIABILITIES

Debtor's secured liabilities are listed below:

| Property Address | Liabilities |
|---|---|
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | $215,218.97 |
| 20535 Kenwood Avenue, Torrance, CA | $365,261.70 |
| 881 E. 41st Street, Los Angeles, CA | $484,590.49 |
| 1503 N. Frances Street, Terrell, TX | $47,932.74 |
| 9853-9855 Arabian Nights Street, El Paso, TX | $102,411.67 $11,208.59 |
| 9857-9859 Arabian Nights Street, El Paso, TX | $104,507.56 $8,466.64 |
| Total | **$1,339,598.36** |

Debtor's total secured liabilities $1,339,598.36

Debtor's unsecured liabilities are listed below:

**CLASS #2A.** Administrative Convenience Claims.

| Name of Creditor | Amount of Claim |
|---|---|
| Capital One, N.A. c/o Creditors Bankruptcy | $663.00 |
| Kohl's | $691.00 |
| Target National Bank | $93.00 |
| Asset Acceptance LLC | $117.00 |
| Discover Bank DB Servicing Corporation (Claim 2) | $450.00 |
| FIA Card Services, N.A. (Claim 3) | $525.78 |
| Total | $2,539.78 |

**CLASS #2B.** General Unsecured Claim

| DESCRIPTION | Claim Amount |
|---|---|
| Wells Fargo Card Services (Claim 1) | $6,825.82 |
| Discover Bank DB Servicing Corporation (Claim 2) | $450.00 |
| FIA Card Services, N.A. (Claim 3) | $525.78 |
| American Express Bank, FSB (Claim 4) | $1,002.92 |
| OneWest Bank, FSB (Unsecured Claim of Class 1G) | $209,590.49 |
| Wells Fargo Bank (Unsecured Claim of Class 1F) | $13,432.74 |
| Bank of New York Mellon (Unsecured Claim of Class 1E) | $8,466.64 |
| Bank of America (Unsecured Claim of Class 1D) | $3,007.56 |
| Bank of America (Unsecured Claim of Class 1C) | $11,208.59 |
| The Bank of America (Unsecured Claim of Class 1B) | $27,411.67 |
| Bank of America (Unsecured Claim of Class 1A) | $90,269.70 |

Total Amount of Unsecured Liabilities  $380,872.91

## PART XII
## HISTORICAL AND CURRENT FINANCIAL INFORMATION

The average employment net income of $6,189.97 per month was received during the pendency of the Bankruptcy Petition.  This income is expected to be received throughout the life of the plan.

Debtor has filed monthly operating reports with the court, which show a profit each month.

- 42 -

After stipulations and loan modifications the monthly net income is $3,377.61 that she receives from rental income. The following is a chart of historical pre-confirmation and post confirmation income.

### PRE-PETITION

| Property Address | Monthly Income | Mortgage | Expenses | Net Income |
|---|---|---|---|---|
| 10113, 10113 ½, 10115 S. Main Street | $2,250.00 | $2,046.00 | $396.74 | ($82.74) |
| 20535 Kenwood Avenue | $1,800.00 | $3,070.00 | $110.00 | ($1,639.00) |
| 881 E. 41st Street | $3,800.85 | $2,534.00 | $761.91 | $504.09 |
| 1503 N. Frances Street | $695.00 | $590.00 | $179.50 | ($74.50) |
| 9853-9855 Arabian Nights Street | $1,310.00 | $1,139.00 | $306.00 | ($135.00) |
| 9857-9859 Arabian Nights Street | $1,275.00 | $1,177.00 | $302.50 | ($204.50) |
| Total | $11,130.85 | $10,556.00 | $2,056.65 | ($1,631.65) |

When the plan is confirmed the estate will show a profit as follows:

### POST-CONFIRMATION

| Property Address | Monthly Income | Mortgage | Expenses | Net Income |
|---|---|---|---|---|
| 10113, 10113 ½, 10115 S. Main Street | $2,360.00 | $1,307.64 | $208.00 | $844.36 |
| 20535 Kenwood Avenue | $1,800.00 | $1,353.00 | $200.00 | $247.00 |
| 881 E. 41st Street | $3,800.85 | $1,237.00 | $1,084.27 | $1,479.58 |
| 1503 N. Frances St | $695.00 | $170.00 | $306.77 | $218.23 |
| 9853-9855 Arabian Nights Street | $1,310.00 | $369.73 | $306.00 | 634.27 |
| 9857-9859 Arabian Nights Street | $1,275.00 | $502.00 | $382.50 | $390.50 |
| **Total** | **$11,240.85** | **$4,939.37** | **$2,487.54** | **$3,813.94** |

## PART XIII
## LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test" which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and the claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must

receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a Chapter 7 Trustee usually sells the Debtor's assets. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holder should receive under a chapter 7 Liquidation. The Plan Proponent maintains that this requirement is met here for the following reason – The unsecured creditors would receive no distribution if all the assets were liquidated.  All the real property has secured liens that exceed the value of the real property.

Below is a demonstration, in balance sheet format, that all creditors and interests will receive at least as much under that Plan as such creditor or interest holder would receive under Chapter 7 liquidation.)

### ASSETS VALUED AT LIQUIDATION VALUE

CURRENT ASSETS
a. Cash on hand                           $10,905.00
b. Accounts receivable                    $-0-
c. Inventories                            $-0-

                                          _____
TOTAL CURRENT ASSETS                      $10,905.00

FIXED ASSETS
d. Furniture and Furnishings              $5,000.00

e. Machinery & Equipment        $-0-
f. Automobile        $10,838.00
g. Building and Land

| Property Address | Values | Liabilities |
|---|---|---|
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | $220,000.00 | $215,218.97 |
| 20535 Kenwood Avenue, Torrance, CA | $275,000.00 | $365,261.70 |
| 881 E. 41st Street, Los Angeles, CA | $275,000.00 | $484,590.49 |
| 1503 N. Frances Street, Terrell, TX | $34,500.00 | $47,932.74 |
| 9853-9855 Arabian Nights Street, El Paso, TX | $75,000.00 | $102,411.67 $11,208.59 |
| 9857-9859 Arabian Nights Street, El Paso, TX | $101,500.00 | $104,507.56 $8,466.64 |
| Vacant Land #3 – Mexico de Corte | $1,200.00 | |
| 30 Manzana Punta Azul, Rosarito, BC | $24,000.00 | |
| Vacant Land Lot 13 Duchesne Mini Ranch, UT | $13,500.00 | |
| Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC | $14,000.00 | |
| Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC | $14,000.00 | |
| Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $14,500.00 | |
| Calle Reforma #58, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $30,923.00 | |
| Total | $1,093,123.00 | $1,339,598.36 |

     TOTAL FIXED ASSETS      $1,108,961.00
OTHER ASSETS
   h. Customer List        $-0-
   i. Stocks, bonds, financial assets        $-0-
   j. Lawsuits or other claims against
      Third parties        $-0-
   k. Other intangibles (e.g. avoiding powers)        $-0-

     TOTAL OTHER ASSETS      $-0-
TOTAL CURRENT ASSETS:      $10,905.00
TOTAL FIXED ASSETS      $1,108,961.00
TOTAL OTHER ASSETS:      $-0-
TOTAL ASSETS AT LIQUIDATION VALUE:      $1,119,866.00

Less;
Secured creditor's recovery[1]      $1,655,517.55

---

[1]  NOTE: The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

- 45 -

Less:

Chapter 7 Trustee Fees and expenses                      $130,035.00

Less:

Chapter 11 administrative expenses                       $650.00

Less:

Priority Claims, excluding administrative expense claims    $0

Less:

Debtor's claimed exemptions                              $25,050.00

(1)  Balance for unsecured claims                        $-0-

(2)  Total amount of unsecured claims                    $380,872.91

PERCENT OF THEIR CLAIMS WHICH UNSECURED CREDITOR WOULD RECEIVE OR RETAIN IN A CHAPER 7 LIQUIDATION[2]: ZERO (0%)

PERCENT OF THEIR CLAIMS, WHICH UNSECURED CREDITORS, WILL RECEIVE OR RETAIN UNDER THIS PLAN: 37%                $140,922.98

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 Secured Claims | 100% | 81% |
| Class 2 General Unsecured Class | 37% | 0% |
| Class 3 Interest Holders | 100% | 0% |

## PART XIV
## FEASIBILITY

Another requirement for confirmation involves the feasibility of the plan, which means that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

---

[2]  Note: if this percentage is greater that the amount to be paid to the unsecured creditors on a "present value basis' under the Plan, the Plan is not confirmable unless proponent obtains acceptance by every creditor in an impaired class.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

**Effective Date Feasibility**
Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $35,369.99 |
| Payments on Effective Date | | |
| Unclassified Claims | $0 | |
| Administrative Expense Claims | $15,000.00 | |
| Priority Claims | $0 | |
| U.S. Trustee Fees | $650.00 | |
| B. Total Payments on Effective Date | | $15,650.00 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | $19,719.99 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $27,985.98 | Cash in DIP Account currently |
| +$7,384.01 | Additional cash DIP will accumulate from Net earnings between now and Effective Date. |
| +-0- | Borrowing |
| +-0- | Capital Contributions |
| +-0- | Other |
| $35,369.99 | Total |

The second aspect of feasibility considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

# FINANCIAL STATEMENTS

**Monthly Income and Expenses**

| Income | | Amount |
|---|---|---|
| Current monthly gross wages, salary | $9,145.79 | |
| **TOTAL AVERAGE MONTHLY INCOME** | | $9,145.79 |
| Income from real property | | |
| 20535 Kenwood Avenue, Torrance CA | $1,800.00 | |
| 9853-9855 Arabian Nights Street, El Paso, TX | $1,310.00 | |
| 9857-9859 Arabian Nights Street, El Paso, TX | $1,275.00 | |
| 1503 N. Frances Street, Terrell, TX | $695.00 | |
| 881 E. 41st Street, Los Angeles, CA | $3,800.85 | |
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | $2,360.00 | |
| **Total Rental Income** | | $11,240.85 |
| **A. TOTAL MONTHLY INCOME** | | **$20,386.64** |

| Expenses | Amount |
|---|---|
| Home rental | $1,100.00 |
| Utilities: Electricity and heating fuel | $50.00 |
| Utilities: Water and sewer | $50.00 |
| Utilities: Telephone, Cable, Internet | $110.00 |
| Utilities: Other | $50.00 |
| Food | $700.00 |
| Clothing | $50.00 |
| Medical and dental expenses | $50.00 |
| Transportation | $400.00 |
| Recreation, clubs and entertainment, newspapers, magazine, etc. | $100.00 |
| Charitable contributions | $50.00 |
| Insurance: Life | $80.00 |
| Insurance: Auto | $190.00 |
| Taxes: (not deducted from wages or included in home mortgage) | $2,955.82 |
| **Total Personal Expenses** | **$5,935.82** |
| Class 1A Bank of America (20535 Kenwood Avenue)          $1,353.00 | |
| Class 1B Bank of America (9853-9855 Arabian Nights)       $369.73 | |
| Class 1D Bank of America (9857-9859 Arabian Nights)       $502.00 | |
| Class 1F Wells Fargo Bank, N.A., (1503 N. Frances Street)  $170.00 | |
| Class 1G One West Bank, FSB (881 E. 41st Street)          $1,237.00 | |
| Class 1H Bayview Loan Servicing, LLC (10113, 10113 ½ Main)$1,307.64 | |
| 20535 Kenwood Avenue, Torrance CA | $200.00 |
| 9853-9855 Arabian Nights Street, El Paso, TX | $306.00 |
| 9857-9859 Arabian Nights Street, El Paso, TX | $382.50 |
| 1503 N. Frances Street, Terrell, TX | $306.77 |

| | |
|---|---|
| 881 E. 41st Street, Los Angeles, CA | $1,084.27 |
| 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | $208.00 |
| **Regular Expenses from operation of rental properties** | **$7,426.91** |
| **B. TOTAL MONTHLY EXPENSES** | **$13,362.73** |

| | |
|---|---|
| **C. Disposable Income** (Line A – Line B) | **$7,426.91** |

| **Plan Payments**<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims-Trustee Fees | $216.67 |
| Priority Claims | NONE |
| General Unsecured Creditors | $2,348.72 |
| **D. Total Plan Payments** | $2,565.39 |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $4,458.52 |

The Proponent has provided financial information, which include both historical and projected financial statements. **YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.**

In summary, the Plan proposes to pay $7,046.15 each quarter ($2,348.72 each month). As Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $4,458.52 each month for the life of the Plan. The final Plan payment is expected to be paid on December 1, 2018. The Plan Proponent contends that Debtor's financial projections are feasible. As shown by Debtor's historical financial statements, Debtor's average monthly cash flow, after paying operating expenses and post-confirmation taxes, in the three years preceding the filing of this bankruptcy case is sufficient to make the plan payment. Furthermore, as discussed earlier in the Disclosure Statement. Debtor has obtained loan modifications and has procedures to decrease costs and increase income which will increase her

productivity.

## PART XV
## FINANCIAL PROJECTIONS

The income for each real property stated in the Disclosure Statement based upon the current and actual, rents received which depicts operations following the Effective Date for sixty (60) months. The financial projections are made utilizing the historical information as reflected in the operating reports filed with the Court. The assumptions made in formulating the projections, such as expected rents received and gross and net profit levels are based on the loan modifications received by the secured lenders in the rental properties and consistent rental occupancy.

## PART XVI
## MARKETING EFFORTS

None of the real property was marketed since each of the real properties was over encumbered and a sale would not realize any proceeds to the Estate. The Debtor will market the land lot 13 in Duchesne Mini Ranch, Utah to reduce the non-income producing economic burden of the Estate.

| Class | Name of Secured Creditor | Property Address | Value | Monthly Payment |
|---|---|---|---|---|
| - | None | Vacant Land #3 – Mexico de Corte | $1,200.00 | $24.99 |
| - | None | 30 Manzana Punta Azul, Rosarito, BC | $24,000.00 | $90.82 |
| - | None | Vacant Land Lot 13 Duchesne Mini Ranch, UT | $13,500.00 | $49.49 |
| - | None | Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC | $14,000.00 | $69.16 |
| - | None | Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC | $14,000.00 | $69.16 |
| - | None | Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $14,500.00 | $82.66 |
| - | None | Calle Reforma #58, Ciudad Hidalgo House and Lot in Michoacán, Mexico | $30,923.00 | $82.72 |

The following should be noted:

1.  There are no secured creditors with Notes against the above property. None of the above property is secured by Deeds of Trusts.

2.  The Real Property situated in Mexico is located in a lawless and hostile area. The Debtor's family members have already been kidnapped and held for ransom on multiple occasions. Real Property in this area can not be advertised for sale because such advertisements serve to notify kidnappers of potential victims. Debtor would prefer to abandon the Mexican Property rather than to subject her family to further risk of further harm.

3.  Debtor holds a contingent interest in the Calle Reforma #58 property after her parents' life estate.

4.  There are no recorded titles on any of the real estate located in Mexico.

5.  The monthly payments represent the amount of taxes and insurance if the annual amount were paid in equal monthly installments.

Debtor will sell or abandon the above real property by December 2013, paying the unsecured creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days notice to lienholders whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale.  Any deficiency claim is a general unsecured claim treated in Part 2B.

The Debtor contends that there are no Creditors in this class. However, if any exist, they may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. These secured claims are impaired and are entitled to vote on confirmation of the Plan.

## PART XVII
## POST-PETITION EVENTS

The major events, which affected the case were:

A.  Employment of Andrew H. Griffin, III, Attorney for Debtor;

- 51 -

B.  Employment of Appraiser.

C.  The following loan modifications resulted in reduction of principal, reduced interest rates or arrears, which significantly caused the increase of monthly cash flow:

1.  On October 23, 2012, Debtor entered into a loan modification with secured creditor Bayview Loan Servicing, LLC on the property located at 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA.

2.  The real properties were valued at significantly lower amounts than the encumbrances.

3.  Debtor has reached an agreement with the father of her children that no Child support payment is payable.

4.  Debtor has discontinued the use of a property manager and entered into an agreement to have the tenant provide for the landscaping of the Kenwood property. The change resulted in a positive cash flow.

## PART XVIII
## MANAGEMENT COMPENSATION

There are no managers, insiders or otherwise, employed by the Debtor.  The Debtor is living on proceeds of the estate.

## PART XIX
## INSIDER AND AFFILIATE CLAIMS

The only insider is the Debtor who will pay herself the sum of $6,189.97 per month for her living expenses.

### Debtor's Interest in Worldwide Ballistics, Inc.

The Debtor holds an One hundred (100%) percent interest in Worldwide Ballistics, Inc. The Debtor estimates that the value of Worldwide Ballistics, Inc. is zero. This estimate is based on the

- 52 -

fair market value of the real property consisting of a commercial building located at 10121 S. Main Street, Los Angeles, CA.  The company owns a one-third interest in the subject property with Debtor's uncle, Ramon Carmona and Debtor's brother Amador Carmona.

The value is calculated as follows: The fair market value of $220,000.00 less the existing liens of $300,000.00 is -$80,000.00. The Company's one-third interest results in a value of (-$26,670.00) The rents are servicing the debt.  There is no income received by the Debtor.  The Debtor does not have a personal guarantee to pay the note secured by the real property.

Vacant lot 1 located at: 343 Cygrus Street SW, Ocean Shore, Washington 98567, valued at $13,000.00.

Vacant lot 2 located at: 454 Volans Avenue SW, Ocean Shore, Washington 98569, valued at $13,000.00.  Debtor receives no income from the vacant lots.

## PART XX
## UNITED STATES TRUSTEE SYSTEM FUND FEES

A fee is required by the provisions of the Title 28 United States Code §1930 (a)(6), to be paid quarterly to the United States Trustee by a debtor in a Chapter 11 case. The amount of fee is based on the debtor's disbursements for the preceding quarter. The debtor's obligation to pay the fee continues after plan confirmation and until the Chapter 11 case is fully administered and closed.  On the effective Date of the Plan, the Debtor shall be current with all quarterly fees due as of that date. Any delinquent fees will be paid in full. Quarterly fees will be paid every calendar quarter thereafter as a first priority under the Plan until the case is closed.

The fee for the quarter ending with the Effective Date of the Plan will be paid on the Effective Date of the Plan. Thereafter, quarterly fees will be paid until the case is closed. As stated in Section XIV of the plan, Debtor expects the case to be closed when payments to the creditor have commenced (about 30 days after the effective Date of the Plan), or after claim objection, if any, have

been resolved.

## PART XXI
## TAX ANALYSIS

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATORNEYS, AND/OR ADVISORS.** The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules, which make it difficult to state completely, and accurately all the tax implications in any action.

A.  Tax Impact on the Debtor

Scope and Limitations.  Under the Internal Revenue Code of 1986, as amended (the "Tax Code"), there may be significant federal and state income tax issues for the Reorganized Debtor arising under the Plan described in this Disclosure Statement.  It is not practical to present a detailed explanation of all of the possible federal income tax ramifications of the Plan.  The following is only a summary discussion of certain of the significant consequences, which may affect claimants.  This summary is based upon laws, regulations, rulings, and decisions now in effect and proposed regulations, all of which are subject to change (possibly with retroactive effect) by legislation administrative action, or judicial decision.

Under present law, there is uncertainty surrounding below.  For such reason or otherwise, the tax consequences of certain aspects of transactions involving the Debtor or the Plan may be subject to administrative or judicial interpretations that differ from the discussion below.  Further, this summary does not discuss all aspects of the Tax Code or of federal, state or local taxation that may

be relevant to a particular claimant. The federal income tax consequences to any particular claimant may be affected by special considerations not discussed below, the transactions contemplated in the Plan may have significant state and local tax consequences, which are not discussed herein. Neither a ruling from the Internal Revenue Service (the "IRS") nor an opinion of counsel has been requested with respect to the federal income tax consequences of the Plan.

ACCORDINGLY, ALL CLAIMANTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE AND LOCAL-TAX-CONSEQUENCES OF THE PLAN ON THEIR CLAIM(S), NEITHER THE DEBTOR, NOR IT'S COUNSEL MAKES ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CLAIMANT. THE DEBTOR AND ITS COUNSEL IS NOT RENDERING ANY FORM OF LEGAL OPINION AS TO ANY TAX CONSEQUENCES.

## PART XXII
## RISKS TO CREDITORS UNDER THE PLAN

Creditors will be paid under the Plan from future earnings. The proposed Plan has the following risks which may impede the Debtor's ability to perform under the Plan or that would otherwise cause the Debtor to fail to meet the Plan's requirements.

A. Risks of Future Rental Income

No assurances can be given as to the future rental income. No assurances can be given as to when, if ever, there will be vacancies in the rental units that result in the proceeds under the Plan. The pursuit of delinquent rents and/or evictions is time consuming and may incur costs of litigation.

B. Liquidation of Claims

As of the date hereof, there is no claim that is pending liquidation. There can be no assurance that any future liquidation outcome will be favorable to the estate. As a result, assets may

be diminished by litigating such claims, thereby reducing such funds available for distribution to Holders of Allowed Claims.

Additionally, if the aggregate amount of Allowed Claims in any Class exceeds Debtor's present estimate of such Allowed Claims, the recovery obtained by holders of Allowed Claims in such Class will be adversely affected.

## PART XXIII
## DEFAULT PROVISIONS

The following are Events of Default under the Plan:

Notwithstanding any contrary provision in the Disclosure Statement, any pleading or other document filed in this case, or any other document, contract or agreement, and except as provided for, should the debtor fail to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any party in interest adversely affected by such failure may give the Debtor notice, in writing, and filed with the Court of such failure to perform (a "Notice of Default").   If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class. The adversely affected party may file a motion with the Court to determine what relief may be appropriate because of such default, including but not limited to the entry of an order to timely perform under the Plan, dismissal of the case, or conversion of the case to one under Chapter 7, provided, however that if a final decree closing this case has been entered by the Court, the adversely affected party may seek its State Court judicial or nonjudicial relief.  The triggering event of default under the Plan shall be the filing of a written notice of default with the Bankruptcy Court.

A.  Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

B.  Revocation of the Order Confirming the Plan.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation with 180 days after the entry of the order of confirmation.

## PART XXIV
## EFFECT OF CONFIRMATION OF PLAN

A.  Discharge

This Plan provides that upon payment in full of proposed plan payments to the creditors, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11. U.S.C. §1141. However, the discharge will not discharge any liability imposed by the Plan. Debtor will not be discharged from any debt excepted from discharge under §523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B.  Revesting of Property in the Debtor

Except as provided in Section elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

C.  Modification of the Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

D.  Post-Confirmation Quarterly reports

Plan Proponent shall file ongoing quarterly reports with the Court in compliance with United States Trustee reporting requirements and guidelines. The quarterly reports shall be served on the Untied States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.

E.  Final Decree

Once the estate has been fully administered as referred to in the Federal Rule Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Court shall designate in the plan Confirmation order, shall file a motion with the Court to obtain a final decreed to close the case.

F.  Retained Bankruptcy Court Jurisdiction

The jurisdiction of the Court shall continue after the Effective Date of the Plan, whether or not the case is closed with respect to the following:

1.  Determination of the allowability of disputed claims, together with the claims of Debtor for affirmative relief;

2.  Assumption or rejection of unexpired leases and executory contracts, and determination of disputed claims arising out of rejections;

3.  Determination of any tax liability under Bankruptcy Code §505;

4.   Determination of requests for payment of claims entitled to priority under Bankruptcy Code §507(a)(1);

5.   Resolution of any disputes regarding interpretation of the Plan; and

Implementation or modification of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation appropriate orders to protect the Reorganized Debtor from creditors' actions.

**PART XXV**
**DISCLAIMER**

The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has conditionally approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. Court conditional approval of the Disclosure Statement does not warrant the accuracy in the information contained therein, rather, that the requirements of 11 U.S.C. §1125 have been met.

Dated: July 15, 2013                      /s/ Hortensia Carmona
                                          Hortensia Carmona, Debtor/Plan Proponent

Submitted by:                  **Law Offices of Andrew H. Griffin, III**

                                          /s/ Andrew H. Griffin, III
                                          Andrew H. Griffin, III, Esq.
                                          Attorney for Debtor/Plan Proponent,
                                          Hortensia Carmona

# Exhibit "A"

Andrew H. Griffin, III, (State Bar Number 108378)
Law Offices of **ANDREW H. GRIFFIN, III**
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

Attorney for Debtor in Possession,
Hortensia Carmona

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>Hortensia Carmona,<br><br>        Debtor in Possession. | Case No.: 12-08679-PB11<br><br>Chapter 11<br><br>**HORTENSIA CARMONA'S PLAN OF REORGANIZATION, DATED JULY 15, 2013**<br><br>Judge: Honorable Peter W. Bowie |

Hortensia Carmona, Debtor in Possession in this Chapter 11 case ("Debtor"), proposes the following Plan of Reorganization Dated July 15, 2013:

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Hortensia Carmona (the "Debtor") from the personal services income and from cash flow from operations. This Plan provides for 8 classes of secured claims and 2 classes of unsecured claims. The plan provides for the payment of secured claims. Any secured creditor who accepts the collateral securing the claim accepts the collateral in full satisfaction of creditor's claim.

The current unsecured creditors holding allowed claims that will receive distributions in the

amount of $140,922.98. In addition to the payment as set forth in the plan, whenever the reorganized Debtor's account exceeds thirty thousand ($30,000.00) dollars. Debtor shall segregate funds that exceed the $30,000.00 reserve in a separate account and shall distribute funds (not less than $5,000.00) to the unsecured creditors in Class 2B. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class.

In addition, the unsecured creditors in Class 2B shall receive a pro-rata share of the net sales proceeds from the sale of the real property Vacant Land Lot 13 in Duchesne Mini Ranch, UT. Pro-rata means the entire amount of the net sales proceeds divided by the entire amount owed to creditors with allowed claims in this class. The estimated net sales proceeds are $10,000.00.

This Plan provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01    Class 1.        Secured Claims

        Class 1A

This class is comprised of the Secured Claim of Bank of America. (The "First Secured Claim") which is asserted as a secured claim against the property located at 20535 Kenwood Avenue, Torrance, CA, reflected by a first deed of trust in the approximate amount of $365,261.70. [No claim has been filed by the Creditor.]

#### Class 1B

This class is comprised of the Secured Claim of The Bank of America. (The "First Secured Claim") which is asserted as a secured claim against the property located at 9853-9855 Arabian Nights Street, El Paso, TX, reflected by a first deed of trust in the approximate amount of $102,411.67. [This appears on the claims register as Claim Number 10]

#### Class 1C

This class is comprised of the Secured Claim of Bank of New York Mellon. (The "Second Secured Claim") which is asserted as a secured claim against the property located at 9853-9855 Arabian Nights Street, El Paso, TX, reflected by a second deed of trust in the approximate amount of $11,208.59. [This appears on the claims register as Claim Number 8]

#### Class 1D

This class is comprised of the Secured Claim of Bank of America, N.A. (The "First Secured Claim") which is asserted as a secured claim against the property located at 9857-9859 Arabian Nights Street, El Paso, TX, reflected by a first deed of trust in the approximate amount of $104,507.56. [This appears on the claims register as Claim Number 6]

#### Class 1E

This class is comprised of the Secured Claim of The Bank of New York Mellon fka The Bank of New York (The "Second Secured Claim") which is asserted as a secured claim against the property on 9857-9859 Arabian Nights Street, El Paso, TX in the approximate amount of $8,466.64. [This appears on the claims register as Claim Number 9]

#### Class 1F

This class is comprised of the Secured Claim of Wells Fargo Bank, N.A. (The "First Secured Claim") which is asserted as a secured claim against the property located at 1503 N. Frances Street,

Terrell, TX reflected by a first deed of trust in the approximate amount of $47,932.74. [This appears on the claims register as Claim Number 7]

Class 1G

This class is comprised of the Secured Claim of OneWest Bank, FSB. (The "First Secured Claim") which is asserted as a secured claim against the property located at 881 E. 41st Street, Los Angeles, CA reflected by a first deed of trust in the approximate amount of 484,590.49. [No claim has been filed by this Creditor.]

Class 1H

This class is comprised of the Secured Claim of Bayview Loan Servicing, LLC (The "First Secured Claim") which is asserted as a secured claim against the property located at 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA, reflected by a First deed of trust in the approximate amount of $215,218.97. [This appears on the claims register as Claim Number 12]

2.02   Class 2.   **General Unsecured Creditors**

**Class 2A.  Administrative Convenience Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid | (%) to be Paid |
|---|---|---|---|
| Capital One, N.A. c/o Creditors Bankruptcy | $663.00 | $245.31 | 37% |
| Kohl's | $691.00 | $255.67 | 37% |
| Target National Bank | $93.00 | $34.41 | 37% |
| Asset Acceptance LLC | $117.00 | $43.29 | 37% |
| Discover Bank DB Servicing Corporation (Claim 2) | $450.00 | $166.50 | 37% |
| FIA Card Services, N.A. (Claim 3) | $525.78 | $194.54 | 37% |
| Total | $2,539.78 | $939.72 | 37% |

- 4 -

This class is comprised of all unsecured claim holders against Debtor including the above classes whose under secured portion of their claims are not secured by any assets of the Debtor. The following is a list of allowed general Unsecured Claims that currently exist in the plan.

| CLASS #2B General Unsecured Claim DESCRIPTION | Claim Amount | IMPAIRED (Y/N) | TREATMENT Payment Interval **Quarterly** |
|---|---|---|---|
| Macy's | $2,817.00 | Y | $52.11 Quarterly Total Payout $1,042.29 |
| Chase Bank | $4,300.00 | Y | $79.55 Quarterly Total Payout $1,591.00 |
| Wells Fargo Card Services (Claim 1) | $6,825.82 | Y | $126.28 Quarterly Total Payout $2,525.55 |
| American Express Bank, FSB (Claim 4) | $1,002.92 | Y | $18.55 Quarterly Total Payout $371.08 |
| OneWest Bank, FSB (Unsecured Claim of Class 1G) | $209,590.49 | Y | $3,877.42 Quarterly Total Payout $77,548.48 |
| Wells Fargo Bank (Unsecured Claim of Class 1F - Claim 7) | $13,432.74 | Y | $248.50 Quarterly Total Payout $4,970.11 |
| Bank of New York Mellon (Unsecured Claim of Class 1E - Claim 9) | $8,466.64 | Y | $156.63 Quarterly Total Payout $3,132.66 |
| Bank of America (Unsecured Claim of Class 1D - Claim 6) | $3,007.56 | Y | $55.64 Quarterly Total Payout $1,112.80 |
| Bank of America (Unsecured Claim of Class 1C - Claim 8) | $11,208.59 | Y | $207.36 Quarterly Total Payout $4,147.18 |
| The Bank of America (Unsecured Claim of Class 1B - Claim 10) | $27,411.67 | Y | $507.12 Quarterly Total Payout $10,142.32 |
| Bank of America (Unsecured Claim of Class 1A) | $90,269.70 | Y | $1,669.99 Quarterly Total Payout $33,399.79 |

| | |
|---|---|
| Amount Class 2A Small Claims | $2,539.78 |
| Amount Class 2B General Unsecured | $378,333.13 |
| Total Unsecured | $380,872.91 |

2.03   Class 3.        The interests of the individual Debtor in property of the estate.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS**

3.01     <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02     <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03     <u>Priority Tax Claims</u>.  There are no priority tax claims.

3.04     <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01 <u>Impairment of Claims</u>:

The claims of Class 1A, 1B, 1C, 1D, 1F, 1G, 1H, 2A and 2B are impaired under the Plan. The claims of all other classes are unimpaired under the plan. All impaired classes are entitled to vote as set forth below:

Claims and interests shall be treated as follows under this Plan:

4.02 <u>Administrative Claims</u>:

To the best of its knowledge, the Debtor is current with administrative creditors except with respect to the Debtor's attorneys. Unpaid legal and professional fees owed to the Law Offices of

- 6 -

Andrew H. Griffin, III is estimated to be approximately $15,000.00 as of the Effective Date of the Plan.

4.03 <u>Class 1A</u>

The claim of **The Bank of America, N.A**, to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered. Debtor intends to retain the real property located at 20535 Kenwood Ave., Torrance, CA which is the collateral for the subject claim.

On December 13, 2012, the Court entered an Order on Motion to Value the real property. (Docket No. 155) valuing the property in the amount of $275,000.00. Debtor will pay as a secured claim the amount equal to the value of the collateral that is $275,000.00. Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments. Payments will be due on the Fifth day of the month, starting the first month after the effective date. The remaining amount due of $90,261.70 is a general unsecured claim treated in Class 2B. The Creditor in this class shall retain its interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

<u>Class 1B</u>

The claim of **Bank of America, N.A**, to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered. Debtor intends to retain the real property located at 9853-9855 Arabian Nights St., El Paso, TX. Debtor will pay as a secured claim the amount equal to

HORTENSIA CARMONA'S PLAN OF REORGANIZATION, DATED JULY 15, 2013

the value of the collateral that is $75,000.00.  Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments.  Payments will be due on the Fifth day of the month, starting the first month after the effective date.  The remaining amount due of $27,411.61 is a general unsecured claim treated in Class 2B.  The Creditor in this class shall retain its interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

Class 1C

The claim of **New York Mellon**, to the extent allowed as a secured claim under §506 of the Code on the property commonly known as 9853-9855 Arabian Nights St., El Paso, TX. The claim is impaired. The claims will be treated as wholly unsecured in the amount of $11,208.59 and treated in Class 2B.

On March 11, 2013, the Court will hear a Motion to Value the real property valuing the property in the amount of $75,000.00. Prior to confirmation, Debtor will obtain an order or stipulation fixing the secured amount of the above creditor's claims at zero.  Debtor will pay nothing to this creditor as a secured claim.  The claim of a creditor whose lien is stripped is a general unsecured claim treated in Class 2B.

The Creditor in this class may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

HORTENSIA CARMONA'S PLAN OF REORGANIZATION, DATED JULY 15, 2013

Class 1D

The claim of **Bank or America**, to the extent allowed as a secured claim under §506 of the Code on the property commonly known as 9857-9859 Arabian Nights St., El Paso, TX. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered.

**The Bank of America, N.A.,** and the Debtor have entered into an agreement which terms are fully incorporated into the plan and confirmed by Court Order. (Docket No. 160) The Stipulation is as follows:

"1. The Arabian Nights Property will be valued at $101,500.00 for the purposes of this Chapter 11 case, the Disclosure Statement, and Plan;
2. Bank of America's first lien secured by the Arabian Nights Property will be bifurcated into a secured portion of $101,500.00, and the remainder will be deemed a general unsecured claim.
3. Bank of America's secured claim of $101,500.00 shall be paid over 30 years at a fixed rate of 4.3%.
4. The new maturity date with regard to the promissory note is December 1, 2042.
5. Debtor's first payment under this agreement will be due on January 1, 2013.
6. All other terms of the Deed of Trust and Note will remain in full force and effect.
7. Bank of America will continue to impound Debtors' account for taxes and insurance and Debtor is obligated to make her monthly escrow payment in addition to her principal and interest payment. Debtor understands that this amount may vary from year to year.
8. Payments shall be made directly to Bank of America: Bank of America N.A., P.O. Box 660933, with reference to the last four digits of the Loan Number 1931, or as otherwise directed.
9. Debtor agrees to incorporate the above agreed terms of lien treatment into any and all future Chapter 11 Plans or Amended Plans.
10. Bank of America agrees to vote for Debtor's Chapter 11 Plan provided it reflects the agreed plan treatment, but reserves the right to object to any other terms of the plan that affect Bank of America and are not covered in this stipulation.
11. If this Chapter 11 bankruptcy is dismissed or converted to another chapter under title 11, Bank of America's first lien shall remain a valid secured lien for the full amount due under the original Promissory Note and all payments received under this agreement will be applied contractually under the original terms of the Deed of Trust and original Promissory Note."

Class 1E

The claim of **The Bank of New York Mellon**, to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. Debtor intends to retain the real property located at

- 9 -

9857-9859 Arabian Nights St., El Paso, TX the collateral securing the claim. On December 17, 2012, the Court entered an Order on Motion to Value the real property (Docket No. 160) valuing the property in the amount of $101,500.00. Prior to confirmation, Debtor will obtain an order or stipulation fixing the secured amount of the above creditor's claims at zero. Debtor will pay nothing to this creditor as a secured claim. The claim of a creditor whose lien is stripped is a general unsecured claim treated in Class 2B.

The Creditor in this class may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

Class 1F

The claim of **Wells Fargo Bank**, to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered. Debtor intends to retain the real property located at 1503 N. Frances Street, Terrell, TX the collateral securing the claim.

The parties have entered into a stipulation. The terms of the loan modification is as follows:

**THE PARTIES STIPULATE AS FOLLOWS**:

1.    Creditor shall have a secured claim in the amount of $37,418.44 to be amortized over 30 years at a fixed interest rate of 4.75% per annum (the "**Secured Claim**").

2.    Creditor shall have an unsecured claim in the amount of $12,023.30 (the "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtor's Chapter 11 Plan, as amended.

3.    Debtor shall tender regular monthly payments of principal and interest to Creditor

- 10 -

(and/or its servicer) in the amount of $195.19 on the first day of each month for the Secured Claim commencing on October 1, 2013 and continuing on the first day of each month thereafter until September 1, 2043 when all outstanding amounts due under the Secured Claim are to be paid in full.

4.    In addition to the principal and interest payment described in paragraph 3 of this Stipulation, Debtor shall tender to Creditor (and/or its servicer) all necessary escrow payments for any and all real property taxes and/or real property insurance advances as required by Creditor (and/or its servicer) and in accordance with any requirements under the Deed of Trust. Debtor shall tender the necessary escrow payments together with the regular monthly mortgage payments described in paragraph 3 above, commencing on October 1, 2013 and continuing on the first day of each month thereafter until September 1, 2043 at which time the Secured Claim and any related escrow charges must be paid in full. The current amount of the escrow payment is $284.87; however, Debtor understands the amount of this payment is subject to change.

5.    In the event of any default on any of the provisions of this Stipulation, Creditor shall provide written notice, via certified mail, to Debtor at the Subject Property and to Debtor's attorneys of record, provided the Debtor's bankruptcy remains active, indicating the nature of default. If Debtor fails to cure the default or payment default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property, including unlawful detainer, without further notice, order, or proceeding of this Court.

6.    The acceptance by Creditor (and/or its servicer) of a late or partial payment shall not

- 11 -

act as a waiver of Creditor's right to proceed hereunder.

7.      Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of Creditor's Secured Claim.

8.      In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

9.      In the event the Debtor defaults under this Stipulation and Creditor (and/or its servicer) forwards a 30-day default letter to Debtor, Debtor shall be required to tender Creditor's reasonable attorneys' fees and costs for each default letter submitted, in addition to the default stated therein, in order to cure the default. Any notice of default that Creditor (and/or its servicer) provides Debtor and/or Debtor's attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

10.     At the request of the Creditor (and/or its servicer), Debtor shall execute such documents and instruments as required by Creditor (and/or its servicer) to reflect the Debtor as the borrower of the Secured Claim, and to modify the terms of the Loan obligation to conform to the provisions of this Stipulation, as Creditor (and/or its servicer) deems necessary.

11.     In the event the Debtor seeks to sell the Subject Property at anytime prior to confirming her Chapter 11 Plan, as amended, or if she seeks to sell the Subject Property through her Chapter 11 Plan, Creditor shall be entitled to credit bid at any such sale in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust at the

time of said sale, with Creditor's lien attaching to said proceeds in the same priority as its Deed of Trust.

12.    In the event the Debtor seeks to sell the Subject Property at anytime after her Plan is confirmed, but prior to the substantial consummation of the Debtor's Chapter 11 Plan and receipt of a Chapter 11 discharge, Creditor (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of Trust. If the proposed sale of the Subject Property is for less than the unmodified, outstanding balance owing under the Note and Deed of Trust, then Creditor's consent must be obtained in writing prior to any such sale. In the event the Debtor seeks to sell the Subject Property after substantial consummation of Debtor's Chapter 11 Plan and receipt of a Chapter 11 discharge, the foregoing requirements of this paragraph 12 shall no longer apply; however, in no event shall the sale of the Subject Property be for less than Creditor's Secured Claim.

13.    The terms of this Stipulation may not be modified, altered, or changed by the Debtor's Chapter 11 Plan; any subsequently filed amended or modified Chapter 11 Plan of Reorganization or any order on the foregoing without the express written consent of the Creditor. The above terms of this Stipulation shall be incorporated into the Debtor's Chapter 11 Plan and/or any subsequently filed amended or modified Chapter 11 Plan and confirmation order thereon. In the event of a conflict between the terms or provisions of this Stipulation and Debtor's Chapter 11 Plan or any amendments or modifications thereto, the terms of this Stipulation shall control.

14.    The terms of this Stipulation are contingent upon the substantial consummation of the Debtor's confirmed Plan and receipt of a Chapter 11 discharge. In the event the Debtor defaults under the terms of this Stipulation or fails to complete Plan payments prior to receipt of a discharge,

- 13 -

the provisions of this Stipulation shall be void.

15.    In the event Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Note and Deed of Trust, and the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

16.    In exchange for the forgoing, Creditor shall provide a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization, as amended, for the Secured Claim and the Unsecured Claim.

Class 1G

The claim of **OneWest Bank**, to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered. Debtor intends to retain the real property located at 881 E. 41st street, Los Angeles, CA the collateral securing the claim.

Debtor contends that the value of the collateral is less than the amount of the claim. On December 13, 2012, the Court entered an Order on Motion to Value the real property. (Docket No. 155) valuing the property in the amount of $275,000.00. Debtor will pay as a secured claim the amount equal to the value of the collateral that is $275,000.00. Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 360 equal monthly payments. Payments will be due on the Fifth day of the month, starting the first month after the effective date. The remaining amount due of $209,590.49 is a general unsecured claim treated in Class 2B. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments under the plan and Debtor receives a discharge.

The Creditor in this class may not repossess or dispose of its collateral so long as Debtor is

- 14 -

not in material default under the Plan. **This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

Class 1H

The claim of **Bayview Loan Servicing**., to the extent allowed as a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered.  Debtor intends to retain the property located at 10113, 10113 ½, 10115 E. Main St., Los Angeles, CA.

Debtor seeks to have the loan Modification to become fully incorporated into the plan. An application to approve the loan modification was filed with the Court (See Docket Number 167). **Property to be Abandoned.**

| Class | Name of Creditor | Description of Collateral |
|---|---|---|
| --- | No Secured Creditor Exists | Vacant Land #3 – Mexico de Corte |
| --- | No Secured Creditor Exists | 30 Manzana Punta Azul, Rosarito, BC |
| --- | No Secured Creditor Exists | Vacant Land #2 - de Lote 8 Manzana 11 Valles de Mar, Rosarito, BC |
| --- | No Secured Creditor Exists | Vacant land - de Lote 9 Manzana 11 Valles Del Mar, Rosarito, BC |
| --- | No Secured Creditor Exists | Calle 20 de Noviembre # 18, Ciudad Hidalgo House and Lot in Michoacán, Mexico |

Debtor will abandon the above Mexican Properties by means of a Quitclaim Deed (Escritura de Renuncia de derechos) on the Effective Date of the Plan.  The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan.  Although Debtor asserts that there are no secured creditors, any secured claim is satisfied in full through the surrender of the collateral. Any deficiency claim is a general unsecured claim treated in Class 2B.  Creditors in these classes shall retain their interest in the collateral. **If a secured claim exists, such secured claim is not**

**impaired and is not entitled to vote on confirmation of the Plan.**

**Property to be Sold.**

| Class | Name of Creditor | Property | Value of Collateral |
|-------|------------------|----------|---------------------|
| ---- | No Secured Creditor Exists | Vacant Land Lot 13 Duchesne Mini Ranch, UT | $13,500.00 |

Debtor will sell the above Real Property by October 1, 2013, paying unsecured creditors from the proceeds of the sale. Although Debtor asserts that there are no liens against the Real Property, Debtor will file a motion for approval of any such sale on 28 days notice to any lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Section 2B.

Class 2

This class is comprised of all unsecured claim holders against Debtor including the above classes whose under secured portion of their claims are not secured by any assets of the Debtor. The following is a list of allowed general Unsecured Claims that currently exist in the plan.

**Class of General Unsecured Claims**

**Class 2A. Administrative Convenience Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid | (%) to be Paid |
|------------------|-----------------|-------------------|----------------|
| Capital One, N.A. c/o Creditors Bankruptcy | $663.00 | $245.31 | 37% |
| Kohl's | $691.00 | $255.67 | 37% |
| Target National Bank | $93.00 | $34.41 | 37% |
| Asset Acceptance LLC | $117.00 | $43.29 | 37% |

| Discover Bank DB Servicing Corporation (Claim 2) | $450.00 | $166.50 | 37% |
|---|---|---|---|
| FIA Card Services, N.A. (Claim 3) | $525.78 | $194.54 | 37% |
| Total | $2,539.78 | $939.72 | 37% |

The Plan provides for holders of Allowed General Unsecured Claims. There will be pro rata Cash payments to Unsecured Creditors. The pro rata shall be 37% percent, paid at the rate of $7,046.15 each quarter. Creditors will receive quarterly payments described above. The estate Real Properties have deferred maintenance, but after loan modifications and creditor negotiations they generate sufficient cash flow to pay the debt service and property improvement. Debtor has budgeted $4,287.88 for unexpected emergencies, capital improvements, repairs and/or vacancies each month which will be used towards the payment of Class 2B claims once a reserve of $30,000.00 is attained. In addition to the payments as set forth above, unsecured creditors in Class 2B will receive a pro-rata share of such excess of the excess over thirty thousand ($30,000.00) dollars. Debtor shall segregate funds that exceed the $30,000.00 reserve in a separate account and shall distribute funds (not less than $5,000.00) to the unsecured creditors in Class 2B. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class.

In addition, the unsecured creditors in Class 2B shall receive a pro-rata share of the net sales proceeds from the sale of the real property Vacant Land Lot 13 in Duchesne Mini Ranch, UT. Pro-rata means the entire amount of the net sales proceeds divided by the entire amount owed to creditors with allowed claims in this class. The estimated net sales proceeds are $10,000.00.

Generally, payments on the Allowed General Unsecured Claims shall be made on a quarterly basis after the Effective Date if the Debtor is current with Secured Creditors. The Allowed General unsecured Claims that are not paid in full from distributions within the Plan shall be discharged

- 17 -

(subject to Debtor's motion pursuant to 11 USC Section 1141) at the expiration of sixty (60) months form the Effective Date ("Discharge Date"). The Debtor reserves the right to seek an order from the bankruptcy court granting a discharge of his debts before the Discharge Date through a noticed motion. Notwithstanding the occurrence of the Discharge Date the Reorganized Debtor's bankruptcy will remain open for the purpose of disbursing proceeds in accordance with this plan. The financial projections were made utilizing the historical information and post confirmation stipulations and loan modifications the secured lenders in the rental properties. The projections do not account for unexpected emergencies, capital improvements, repairs and/or vacancies.

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 - Secured Claim of 1A) The Bank of America, N.A | Impaired. | Class 1A Property to be retained. Claim to be treated as partially secured ($275,000.00) and partially unsecured ($90,261.70) in Class 2 |
| 1B) Bank of America, N.A. | Impaired. | Class 1B Property to be retained. Claim to be treated as partially secured ($75,000.00) and partially unsecured ($27,411.61) in Class 2. |
| 1C) Bank of New York Mellon | Impaired. | Class 1C Property to be retained. Claim to be treated in Class 2 as Wholly unsecured ($11,208.59). |
| 1D) Bank of America | Impaired. | Class 1D Property to be retained. Claim to be treated as partially secured ($101,500.00) and partially unsecured ($3,007.56) in Class 2 |
| 1E) The Bank of New York Mellon | Impaired. | Class 1E Property retained. Claim to be treated in Class 2 as Wholly unsecured ($8,466.64). |
| 1F) Wells Fargo Bank, N.A. | Impaired. | Class 1F Property to be retained. Claim to be treated as partially secured ($34,500.00) and partially unsecured ($13,432.74) in Class 2 |
| 1G) OneWest Bank, FSB | Impaired. | Class 1G Property to be retained. Claim to be treated as partially secured ($275,000.00) and partially unsecured ($209,590.49) in Class 2. |
| 1H) Bayview Loan Servicing, LLC | Impaired. | Class 1H Property to be retained. Claim to be treated as wholly secured through a loan modification. |
| CLASS #2B General Unsecured Claim | Claim Amount | IMPAIRED (Y/N) TREATMENT Payment Interval |

- 18 -

| DESCRIPTION | | | **Quarterly** |
|---|---|---|---|
| Macy's | $2,817.00 | Y | $52.11 Quarterly Total Payout $1,042.29 |
| Chase Bank | $4,300.00 | Y | $79.55 Quarterly Total Payout $1,591.00 |
| Wells Fargo Card Services (Claim 1) | $6,825.82 | Y | $126.28 Quarterly Total Payout $2,525.55 |
| American Express Bank, FSB (Claim 4) | $1,002.92 | Y | $18.55 Quarterly Total Payout $371.08 |
| OneWest Bank, FSB (Unsecured Claim of Class 1G) | $209,590.49 | Y | $877.42 Quarterly Total Payout $77,548.48 |
| Wells Fargo Bank (Unsecured Claim of Class 1F - Claim 7) | $13,432.74 | Y | $248.51 Quarterly Total Payout $4,970.11 |
| Bank of New York Mellon (Unsecured Claim of Class 1E - Claim 9) | $8,466.64 | Y | $156.63 Quarterly Total Payout $3,132.66 |
| Bank of America (Unsecured Claim of Class 1D - Claim 6) | $3,007.56 | Y | $55.64 Quarterly Total Payout $1,112.80 |
| Bank of America (Unsecured Claim of Class 1C - Claim 8) | $11,208.59 | Y | $207.36 Quarterly Total Payout $4,147.18 |
| The Bank of America (Unsecured Claim of Class 1B - Claim 10) | $27,411.67 | Y | $507.12 Quarterly Total Payout $10,142.32 |
| Bank of America (Unsecured Claim of Class 1A) | $90,269.70 | Y | $1,669.99 Quarterly Total Payout $33,399.79 |

| | |
|---|---|
| Amount Class 2A Small Claims | $2,539.78 |
| Amount Class 2B General Unsecured | $378,333.13 |
| Total Unsecured | $380,872.91 |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor have scheduled such claim as disputed, contingent, or unliquidated.

- 19 -

5.02    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan, or other applicable date:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
| --- | --- |
| All tenants of Debtor located at:<br>A.) 10113, 10113 ½, 10115 S. Main Street, Los Angeles, CA | Residential Lease |
| B.) 20535 Kenwood Avenue, Torrance, CA | Residential Lease |
| C.) 881 E. 41st Street, Los Angeles, CA | Residential Lease |
| D.) 1503 N. Frances Street, Terrell, TX | Residential Lease |
| E.) 9853-9855 Arabian Nights Street, El Paso, TX | Residential Lease |
| F.) 9857-9859 Arabian Nights Street, El Paso, TX | Residential Lease |

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty (20) days after the date of the order confirming this Plan.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01 Reorganized Debtor**. On the Effective Date of the Plan, Hortensia Carmona shall become the Reorganized Debtor, and shall continue to operate its business.  Debtor will have approximately $35,369.99 on effective date to pay administrative claims and allowed unsecured claims.

**7.02 Distributions on Effective Date of the Plan**. On the Effective Date of the Plan, the Reorganized Debtor shall pay the following Claims in full:

1.    Unpaid United States Trustee fees calculated to the Effective Date of the Plan; and

2.    Administrative Claims.

**7.03 Distributions Within Thirty (30) Days After the Effective Date of the Plan. (Administrative Convenience Claims).** On or before (thirty) 30 days after the Effective Date of the Plan, the Reorganized Debtor shall pay all Administrative Convenience Unsecured Claims in full, in cash. Administrative Convenience claims are claims $1,000.00 or less, or which are reduced by creditors to $1,000.00.

**7.04 Insiders Employed by Reorganized Debtor**. After the Effective Date of the Plan the officers and directors of the Reorganized Debtor, and their compensation, will be as follows:

| Insider | Position | Compensation |
|---|---|---|
| Hortensia Carmona | Debtor | $6,189.97 per month |

**7.05 Further Financial Reorganization**. Prior to substantial consummation of the Plan, to the extent the Reorganized Debtor finds it (i) desirable to do so to accelerate performance of the Plan, or (ii) necessary to do so, it may seek a modification of the Plan which may provide for further reorganization.

- 21 -

**7.06 Enforcement of Claims**. After the Effective Date of the Plan, the Reorganized Debtor shall retain and enforce claims belonging to the Estate. Such claims include, without limitation, claims based on the avoiding powers contained in 11 U.S.C. §§544, 545 and 547 – 553, inclusive.

**7.07 Grace Period**. Except as otherwise specifically provided in this Plan, actions required to be taken by the Reorganized Debtor shall be accomplished as quickly as practicable after the Effective Date of the Plan. Any payment or act required to be made or done under this Plan shall be made or done no later than thirty (30) days after the date such payment is required to be made.

**7.08 Retained Bankruptcy Court Jurisdiction**. The jurisdiction of the Court shall continue after the Effective Date of the Plan, whether or not the case is closed, with respect to the following:

**7.08.1** Determination of the allowability of deficiency claims, disputed claims, together with the claims of Debtor for affirmative relief;

**7.08.2** Assumption or rejection of unexpired leases and executory contracts, and determination of disputed claims arising out of rejections;

**7.08.3** Determination of any tax liability under §505 of the Bankruptcy Code;

**7.08.4** Determinations of requests for payment of claims entitled to priority under §507(1)(1) of the Bankruptcy Code;

**7.08.5** Resolution of any disputes regarding interpretation of the Plan;

**7.08.6** Implementation or modification of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation appropriate orders to protect the Reorganized Debtor from creditors' actions and to enforce the injunction referred to in Section 7.10 of this Plan; and

**7.08.7** Adjudication of any claims for relief by the Reorganized Debtor based on transactions or events which arose before or after the date of the petition or the Effective Date of the Plan,

- 22 -

including without limitation, claims for relief on behalf of the Estate based on avoiding powers in §§544, 545 and 547 -553, inclusive, of the Code.

**Section 7.9 Effects of Confirmation of the Plan**. Confirmation of the Plan:

**Sub-Section 7.9.1** Binds the Reorganized Debtor, any creditor, and any person or entity acquiring property under the Plan, to the Plan's provisions;

**Sub-Section 7.9.2** Vests all of the property of the Estate in the Reorganized Debtor free and clear of all claims and interest of creditors, except as otherwise provided in the Plan;

**Sub-Section 7.9.3** Discharges the Reorganized Debtor from any debt that arose before confirmation of the Plan except as provided in the Plan;

**Sub-Section 7.9.4** Voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of Hortensia Carmona with respect to a debt discharged; and

**Sub-Section 7.9.5** Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of Hortensia Carmona.

**7.10 Injunctions Against Action to Enforce Pre-Plan Confirmation Debts**. The order confirming the Plan shall include a provision that enjoins all parties in interest: (i) from taking any action to recover property from the Reorganized Debtor on account of a debt that arose before confirmation of the Plan; and (ii) against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt that arose before confirmation of the Plan.

**7.11 Retiree Benefits**. Debtor was not obligated, prior to the Petition Date, to pay retiree benefits, as that term is defined in §1114 of the Bankruptcy Code, and undertakes no obligation to do so after the Effective Date of the Plan.

**7.12 Choice of Law; Venue**. To the extent not inconsistent with United States Bankruptcy Law, the laws of the State of California shall apply with respect to the interpretation and enforcement of the Plan. Any action to interpret or enforce the Plan, and of its provisions or any instrument executed pursuant to provisions of the Plan, may be brought either in the United States Bankruptcy Court, Southern District of California or in the Superior Court, San Diego County.

**7.13 Special Notice**. The Reorganized Debtor shall compile and maintain, and make available to interest parties, a Special Notice list. The List shall contain the names and address of all parties in interest who after the Effective Date of the Plan, ask, in writing, to be added to the List. The Order Confirming the Plan shall contain a provision advising all parties in interest of their opportunity to request special notice of actions proposed to be taken. A copy of the Order shall be served by first class mail on all parties in interest. No notice of any motion, application or action proposed to be taken after the Effective date of the Plan need be given to any party not on the Special Notice List.

**7.14 Debtor's option to seek Plan Confirmation under 11 U.S.C. Section 1129(b)(2).** If necessary, the Debtor may seek confirmation of this Plan pursuant to §1129(b)(1) of the Bankruptcy Code.

**7.15 DEFAULT PROVISIONS**

The following are Events of Default under the Plan:

Notwithstanding any contrary provision in the Disclosure Statement, any pleading or other document filed in this case, or any other document, contract or agreement, and except as provided

- 24 -

for, should the debtor fail to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any party in interest adversely affected by such failure may give the Debtor notice, in writing, and filed with the Court of such failure to perform (a "Notice of Default"). If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class. The adversely affected party may file a motion with the Court to determine what relief may be appropriate because of such default, including but not limited to the entry of an order to timely perform under the Plan, dismissal of the case, or conversion of the case to one under Chapter 7, provided, however that if a final decree closing this case has been entered by the Court, the adversely affected party may seek its judicial or nonjudicial relief in state court. The triggering event of default under the Plan shall be the filing of a written notice of default with the Bankruptcy Court.

    A. Post-Confirmation Conversion/Dismissal

    A Creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, than all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

    B. Revocation of the Order Confirming the Plan.

    The order confirming the Plan may also be revoked under very limited circumstances. The

- 25 -

Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation with 180 days after the entry of the order of confirmation.

### ARTICLE VIII
### GENERAL PROVISIONS

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### ARTICLE IX
### DISCHARGE

9.01    <u>Discharge</u>.  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in §1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted

from discharge under §523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### ARTICLE X
### MISCELLANEOUS PROVISIONS

10.1 <u>Completion of Plan</u>: This Plan shall be deemed completed upon the Reorganized Debtor making all distributions from the Plan Distribution Account and other payments required under the Plan as provided above. Notwithstanding the foregoing, the Plan will be deemed completed eight-four (84) months after the Effective Date.

10.2 <u>Substantial Consummation</u>: As of the Effective Date, upon the execution and delivery of the Plan Documents and commencement of distributions under the Plan, the Debtor may seek an order from the Bankruptcy Court determining that the Plan has been substantially consummated pursuant to section 1101 of the Bankruptcy Code.

10.3 <u>Amendments</u>:

10.3.1 <u>Plan Modifications</u>: This Plan may be amended, modified, or supplemented by the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims pursuant to this Plan, the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

10.3.2 <u>Other Amendments</u>: Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

10.4 <u>Revocation or Withdrawal of this Plan</u>: The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor takes such action, this Plan shall be deemed null and void.

10.5 <u>Cramdown</u>: In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to seek a "cramdown" of this Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject this Plan by virtue of the treatment provided to such Class, this Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

10.6 <u>Confirmation Order</u>: The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

10.7 <u>Severability</u>: If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full

force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable pursuant to its terms.

10.8 <u>Governing Law</u>: Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the Sate of California, without giving effect to the principles of conflict of laws thereof.

10.9 <u>Section 1125(e) of the Bankruptcy Code</u>: The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and each of her respective affiliates, agents, directors, officers, employees, advisors and attorneys) has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale and purchase of the securities offered and sold under this Plan, and therefore is not, and on account of such offer, issuance, sale, solicitation and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance or rejections of this Plan or offer, issuance, sale or purchase of the securities offered and sold under this Plan.

10.10 <u>Expedited Determination</u>: The Reorganized Debtor is hereby authorized to file a request for expedited determination under section 502(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor, or the Reorganized Debtor, as the case may be.

10.11 <u>Time Bar to Payments</u>: The Debtor shall stop payment on any distribution check that has not cleared through the Distribution Account within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any such checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check was issued. Any claim in respect of such voided check shall be made within one hundred and eighty (180) days after the date of the issuance of such voided check. If no claim is made as provided herein, all Claims in respect of voided checks shall be discharged and forever barred. The amount represented by such unclaimed checks, and those undeliverable, after commercially reasonable diligence, shall be distributed pro-rata to the remaining holders of Allowed Claims, pursuant to the terms of this Plan. Distributions to holders of Allowed Claims shall be made to their last known address, which shall be presumed to be as set forth on the proof of claim filed by such Claimant, or if no proof of claim was filed, on the Schedules filed by the Debtor as may have been amended from time to time, unless a Claimant shall have supplied a new or corrected address in writing to the Debtor within two weeks prior to a Distribution to permit the Debtor to revise its records accordingly.

10.12 <u>Fractional Distributions</u>: Notwithstanding anything to the contrary contained in the Plan, no Cash payments of fraction of cents shall be made. Fractional cents shall be rounded to the nearest whole cent.

10.13 <u>Time</u>: In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

10.14 <u>Waiver of Bankruptcy Rule 7062</u>: The Confirmation Order shall include: (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

- 30 -

10.15 <u>Compliance with Tax Requirements</u>: In connection with the Plan, the Debtor and the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and any distributions under the Plan, shall be subject to such withholding and withholding requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations, on account of any distributions. The Debtor has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Debtor for the payment of any tax obligations.

10.16 <u>Notices</u>: All notices, requests and demands to or upon the Debtor and the Reorganized Debtor, to be effective shall be in writing (including facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:

Hortensia Carmona
P.O. Box 62932
Los Angeles, CA 90062

And

Andrew H. Griffin, III, Esq.
Law Offices of Andrew H. Griffin, III
275 E. Douglas Avenue, Suite 112
El Cajon, California 92020
Telephone Number (619) 440-5000
Fax Number (619) 440-5991

10.17 <u>Exhibits</u>: All exhibits and schedules to this Plan, including the Plan Supplement if any, are incorporated by reference into this Plan and are made a part hereof as if more fully set forth herein.

10.18 <u>Binding Effect</u>: The provisions of this Plan (including the Exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with this Plan) and the Confirmation Order shall be binding on (i) Debtor, (ii) all orders of Claims against the Debtor, whether or not impaired under the Plan and whether or not such holders have accepted or rejected the Plan, (iii) each Person or entity receiving, retaining or otherwise acquiring property pursuant to the terms of the Plan, (iv any non-Debtor part to an executory contract or unexpired lease with the Debtor, (v) and any Person or entity making an appearance in this Reorganization Case, and (vi) each of the foregoings' respective heirs, successors, assigns, executors, administrators, officers, directors and agents.

10.19 <u>Business Records</u>: The Debtor's business records shall be maintained at Debtor's present business location.

10.20 <u>Means for Execution of Plan Reorganization</u>: The Payment to be made under the Plan will be funded from the revenues of the rental properties that shall be utilized to make the required distributions to creditors for a period not to exceed sixty (60) months from the Effective Date of the Plan. After the Effective Date of the Plan, the business shall be run by the Debtor. The Debtor shall be entitled to retain all earnings of the Debtor received after the Effective Date of the Plan subject only to the payment requirements of the Plan.

The Debtor will market real property in Debtor in effort to reduce the non-income producing economic burden of the Estate. Debtor will sell or abandon the above real property by September 2013, paying the unsecured creditors from the proceeds of the sale. Debtor will file a motion for

approval of any such sale on 28 days notice to lienholders whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2B.

The financial projections were made utilizing the historical information and post confirmation stipulations and loan modifications the secured lenders in the rental properties. The projections do not account for unexpected emergencies, capital improvements, repairs and/or vacancies. In addition to the payment as set forth in the plan, whenever the reorganized Debtor's account exceeds thirty thousand ($30,000.00) dollars. Creditors will receive a pro-rata share of such excess. Pro-rata means the entire amount of the excess divided by the entire amount owed to creditors with allowed claims in this class.

10.21 Post- Confirmation Employment and Compensation of Reorganized Debtor's Professionals:

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as they may desire to render services on such terms as they deem reasonable. With respect to services rendered by the Post-confirmation Professionals, the Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy.

10.22 Post-Confirmation Status Reports and Final Decree:

The Reorganized Debtor shall file status reports with the Bankruptcy Court on a quarterly basis after entry of the Confirmation Order, describing the progress toward consummation of the Plan. The status reports shall be served on, among others, counsel for the United States Trustee. When the Plan is fully administered in all material respects as referred to in Bankruptcy Rule 3022,

the Reorganized Debtor or other party as the Court shall designate in the Plan Confirmation Order, shall file an application for a final decree and a proposed final decree closing this Reorganization Case. A final decree may be issued notwithstanding that future payments may remain due under the Plan.

10.23 <u>Compliance with Post-Confirmation Reporting and U.S. Trustee's Fees</u>:

On the Effective Date of the Pan, Debtor shall be impressed with the duty to comply with the post-confirmation requirements and U.S. Trustee fees set forth in 28 U.S.C. Section 1930(a)(b).

**ARTICLE XI**
**<u>CONCLUDING STATEMENTS BY DEBTOR</u>**

Since the filing for bankruptcy, Debtor has worked diligently to protect and preserve the assets of the estate and the collective rights of its creditors and to promulgate a Plan of Reorganization for repayment of claims to all of her creditors. Debtor has prepared this Plan in an attempt to treat all creditors in a fair and equitable fashion as provided for by the provisions of the United States Bankruptcy Code.

In summary, Debtor believes that acceptance of this Plan will be in the best interest of Debtor's reorganization and payment of all of her creditor's claims to the greatest extent possible.

By: /s/ Hortensia Carmona
Hortensia Carmona, The Plan Proponent

By: /s/ Andrew H. Griffin, III
Andrew H. Griffin, III, Attorney for the Plan Proponent

HORTENSIA CARMONA'S PLAN OF REORGANIZATION, DATED JULY 15, 2013

# Exhibit "B"

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 1 | Month 2 | Month 3 | Month 4 |
|---|---|---|---|---|
| Beginning Cash | $0.00 | $4,458.52 | $8,917.04 | $13,375.56 |
| | | | | |
| **INCOME** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,553.00 | $1,553.00 | $1,553.00 | $1,553.00 |
| 9853-9855 Arabian Night St. | $675.73 | $675.73 | $675.73 | $675.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.64 | $1,515.64 | $1,515.64 | $1,515.64 |
| Total Rental Property Expenses | $7,426.91 | $7,426.91 | $7,426.91 | $7,426.91 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $4,458.52 | $8,917.04 | $13,375.56 | $17,834.08 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 5 | Month 6 | Month 7 | Month 8 |
|---|---|---|---|---|
| Beginning Cash | $17,834.08 | $22,292.60 | $26,751.12 | $31,209.64 |
| | | | | |
| **INCOME** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $22,292.60 | $26,751.12 | $31,209.64 | $35,668.16 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|
| Beginning Cash | $35,668.16 | $40,126.68 | $44,585.20 | $49,043.72 |
| | | | | |
| **INCOME** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $40,126.68 | $44,585.20 | $49,043.72 | $53,502.24 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 13 | Month 14 | Month 15 | Month 16 |
|---|---|---|---|---|
| Beginning Cash | $53,502.24 | $57,960.76 | $62,419.28 | $66,877.80 |
| | | | | |
| **INCOME** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $57,960.76 | $62,419.28 | $66,877.80 | $71,336.32 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 17 | Month 18 | Month 19 | Month 20 |
|---|---|---|---|---|
| Beginning Cash | $71,336.32 | $75,794.84 | $80,253.36 | $84,711.88 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $75,794.84 | $80,253.36 | $84,711.88 | $89,170.40 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 21 | Month 22 | Month 23 | Month 24 |
|---|---|---|---|---|
| Beginning Cash | $89,170.40 | $93,628.92 | $98,087.44 | $102,545.96 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $93,628.92 | $98,087.44 | $102,545.96 | $107,004.48 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 25 | Month 26 | Month 27 | Month 28 |
|---|---|---|---|---|
| Beginning Cash | $107,004.48 | $111,463.00 | $115,921.52 | $120,380.04 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $1,860.00 | $1,860.00 | $1,860.00 | $1,860.00 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $111,463.00 | $115,921.52 | $120,380.04 | $124,838.56 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 29 | Month 30 | Month 31 | Month 32 |
|---|---|---|---|---|
| Beginning Cash | $124,838.56 | $129,297.08 | $133,755.60 | $138,214.12 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $129,297.08 | $133,755.60 | $138,214.12 | $142,672.64 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 33 | Month 34 | Month 35 | Month 36 |
|---|---|---|---|---|
| Beginning Cash | $142,672.64 | $147,131.16 | $151,589.68 | $156,048.20 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $1,860.00 | $1,860.00 | $1,860.00 | $1,860.00 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $147,131.16 | $151,589.68 | $156,048.20 | $160,506.72 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 37 | Month 38 | Month 39 | Month 40 |
|---|---|---|---|---|
| Beginning Cash | $160,506.72 | $164,965.24 | $169,423.76 | $173,882.28 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $164,965.24 | $169,423.76 | $173,882.28 | $178,340.80 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 41 | Month 42 | Month 43 | Month 44 |
|---|---|---|---|---|
| Beginning Cash | $178,340.80 | $182,799.32 | $187,257.84 | $191,716.36 |
| **Income** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $182,799.32 | $187,257.84 | $191,716.36 | $196,174.88 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 45 | Month 46 | Month 47 | Month 48 |
|---|---|---|---|---|
| Beginning Cash | $196,174.88 | $200,633.40 | $205,091.92 | $209,550.44 |
| Income | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $200,633.40 | $205,091.92 | $209,550.44 | $214,008.96 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 49 | Month 50 | Month 51 | Month 52 |
|---|---|---|---|---|
| Beginning Cash | $214,008.96 | $218,467.48 | $222,926.00 | $227,384.52 |
| Income | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $218,467.48 | $222,926.00 | $227,384.52 | $231,843.04 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 53 | Month 54 | Month 55 | Month 56 |
|---|---|---|---|---|
| Beginning Cash | $231,843.04 | $236,301.56 | $240,760.08 | $245,218.60 |
| Income | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $236,301.56 | $240,760.08 | $245,218.60 | $249,677.12 |

Hortensia Carmona
CASE NO.: 12-08679-PB11

Chapter 11 DEBTOR PROJECTIONS

| PROJECTIONS | Month 57 | Month 58 | Month 59 | Month 60 |
|---|---|---|---|---|
| Beginning Cash | $249,677.12 | $254,135.64 | $258,594.16 | $263,052.68 |
| | | | | |
| **INCOME** | | | | |
| Kaiser Permanente | $9,145.79 | $9,145.79 | $9,145.79 | $9,145.79 |
| **RENTAL INCOME** | | | | |
| 20535 Kenwood Avenue | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 9853 Arabian Knights | $1,310.00 | $1,310.00 | $1,310.00 | $1,310.00 |
| 9857 Arabian Knights | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
| 1503 N. Frances St. | $695.00 | $695.00 | $695.00 | $695.00 |
| 881 E. 41st Street | $3,800.85 | $3,800.85 | $3,800.85 | $3,800.85 |
| 10113 S. Main | $2,360.00 | $2,360.00 | $2,360.00 | $2,360.00 |
| TOTAL CASH INCOME | $20,386.64 | $20,386.64 | $20,386.64 | $20,386.64 |
| **EXPENSES** | | | | |
| Rental Property Expenses | | | | |
| 20535 Kenwood Avenue | $1,960.83 | $1,960.83 | $1,960.83 | $1,960.83 |
| 9853-9855 Arabian Night St. | $1,201.73 | $1,201.73 | $1,201.73 | $1,201.73 |
| 9857-9859 Arabian Night St. | $884.50 | $884.50 | $884.50 | $884.50 |
| 1503 N. Frances St. | $476.77 | $476.77 | $476.77 | $476.77 |
| 881 E. 41st Street | $2,321.27 | $2,321.27 | $2,321.27 | $2,321.27 |
| 10113 S. Main | $1,515.97 | $1,515.97 | $1,515.97 | $1,515.97 |
| | | | | |
| Trustee Fees | $216.67 | $216.67 | $216.67 | $216.67 |
| Unsecured Creditors (Class 2B) | $2,348.72 | $2,348.72 | $2,348.72 | $2,348.72 |
| | | | | |
| Personal Expenses | | | | |
| Home Rental | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Utilities: Electricity and Heating Fuel | $50.00 | $50.00 | $50.00 | $50.00 |
| Water and Sewer | $50.00 | $50.00 | $50.00 | $50.00 |
| Telephone, Cable, Internet | $110.00 | $110.00 | $110.00 | $110.00 |
| Other Utilities | $50.00 | $50.00 | $50.00 | $50.00 |
| Food | $700.00 | $700.00 | $700.00 | $700.00 |
| Clothing | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical/Dental expenses | $50.00 | $50.00 | $50.00 | $50.00 |
| Transportation | $400.00 | $400.00 | $400.00 | $400.00 |
| Recreation, clubs, entertainment | $100.00 | $100.00 | $100.00 | $100.00 |
| Charitable contributions | $50.00 | $50.00 | $50.00 | $50.00 |
| Insurance: Life | $80.00 | $80.00 | $80.00 | $80.00 |
| Insurance: Auto | $190.00 | $190.00 | $190.00 | $190.00 |
| Taxes (payroll) | $2,955.82 | $2,955.82 | $2,955.82 | $2,955.82 |
| Total Personal Expenses | $5,935.82 | $5,935.82 | $5,935.82 | $5,935.82 |
| | | | | |
| Ending Cash | $254,135.64 | $258,594.16 | $263,052.68 | $267,511.20 |